NATIONAL WALL PAPER COMPANY, Appellant, *v.* MEYER L. SIRE, Respondent, Impleaded with Others.

1. MECHANIC'S LIEN LAW — IMPLIED CONSENT OF OWNER TO IMPROVEMENTS. The consent required by the Mechanic's Lien Law (L. 1885, ch. 342, § 1, amd. L. 1895, ch. 673), a remedial statute, to be liberally construed in behalf of those intended to be benefited (§ 25), need not be expressly given in order to make the owner liable for work done or materials furnished, but it may be implied from his conduct and attitude in respect to

improvements in process of construction upon his premises; but the facts from which it may be implied must be such as to indicate at least a willingness on the part of the owner to have the improvements made or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they are employed.

2. CONDUCT OF OWNER IMPLYING CONSENT TO IMPROVEMENTS. The consent necessary to render an owner liable for work done or materials furnished in the improvement of his premises, under the Mechanic's Lien Law, may be implied where he leases them with permission to his tenant to repair at his own cost, the improvements to belong to the owner at the end of the term, and he constantly inspects the tenant's subsequent voluntary and expensive improvements during five months, expresses himself pleased with them and never objects to them, although he knows that the tenant expects him to bear at least a part of the expense.

*Nat. Wall Paper Co.* v. *Sire*, 37 App. Div. 405, reversed.

(Submitted April 4, 1900; decided May 15, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department and the judgment entered thereon February 28, 1899, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry B. Gayley* and *Matthew C. Fleming* for appellant. The provisions of the lease from Sire to Stranahan are such that the law will imply a consent on the part of Sire to the improvements in question. (*Burkitt* v. *Harper*, 14 Hun, 581; 79 N. Y. 273; *Otis* v. *Dodd*, 90 N. Y. 336; *Mosher* v. *Lewis*, 10 Misc. Rep. 373; 14 App. Div. 565.) Independently of the terms of the lease the plaintiff has proved conclusively that the defendant Sire consented to the improvements; that with full knowledge of the work being done and of the materials being furnished, and the object for which they were employed, he acquiesced in the means adopted, made no objection whatever, but expressed his approbation. (*Otis* v. *Dodd*, 90 N. Y. 336; *Husted* v. *Mathes*, 77 N. Y. 388; *Nellis* v. *Bellinger*, 6 Hun, 560; L. 1873, ch. 489; *Mosher* v. *Lewis*, 10 Misc. Rep. 373; *Marshall* v. *Cohen*, 11 Misc. Rep. 397; *Kealy*

v. *Murray*, 15 N. Y. Supp. 403; *Schmalz* v. *Mead*, 125 N. Y.
188; *Miller* v. *Mead*, 127 N. Y. 544.)

*Albert I. Sire* for respondent.   The finding of knowledge
and consent on the part of Sire was unwarranted by the evi-
dence and unwarranted by law.  (*Matter of Brockway*, 34
N. Y. Supp. 42; *McCauley* v. *Hatfield*, 28 N. Y. Supp. 648;
*Jones* v. *Manning*, 6 N. Y. Supp. 338; *Hankinson* v. *Van-
tine*, 152 N. Y. 20.)

O'BRIEN, J.   This was an action to foreclose a mechanic's
lien filed by the plaintiff on the hotel premises known as the
Stuart House, situated on the northeast corner of Forty-first
street and Broadway, in the city of New York, of which the
defendant was the owner.   On the 17th of December, 1895,
the defendant, by a written lease, demised these premises to a
tenant for the term of ten years from that date.   The rent
reserved was thirty-two thousand dollars for the first year,
which was to be increased at the rate of one thousand dollars
per year for each of the four years following, and for the
remaining five years of the term it was fixed at thirty-seven
thousand dollars per year, payable in equal monthly payments
on the first day of every month during the term.   This lease
contains numerous covenants, and among them was a provision
to the effect that the tenant should make the necessary repairs
at his own cost, and any improvements so made should belong
to the owner when the lease was terminated.   It was provided
that in case of default in any of these covenants, whether for
the payment of rent or otherwise, it should be lawful for the
landlord to re-enter and repossess and enjoy the premises, the
tenant expressly waiving the service of any notice for that
purpose, or any legal process for the recovery of the posses-
sion; and in case of a re-entry by the owner for the non-pay-
ment of rent, he might elect to hold the tenant liable for the
sum of fifteen thousand dollars as liquidated damages, and to
secure the landlord in this respect it was provided that the
tenant should deposit with him the sum of five thousand dol-

lars in cash, to be held as security for the faithful perform-
ance of all the covenants and conditions contained in the lease;
and in case of default in the performance of any of them the
landlord was permitted to retain that sum to be applied by
him on the liquidated damages fixed by the terms of the lease.
The demised premises were to be used by the tenant for a
first-class hotel and restaurant. The tenant went into pos-
session of the premises shortly after the execution of the lease.

On the 6th of May, 1896, following the execution of the
lease, the tenant entered into a contract with the plaintiff to
make extensive repairs, alterations and improvements in the
house. Under this contract the plaintiff was to panel the
walls of the reception room from baseboard to cornice with
Lincrusta Walton; to panel off the two ceilings with a border
of relief ornament close to cornice; to paint the walls and
ceilings five coats and the woodwork in three coats of oil; to
put up new picture moulding; to cut out the wall of south
side of the room and supply and put in place white wood col-
umns, pilasters, bases and cornices with composition ornaments,
and to paint the same like the woodwork of the room; to take
out the dumb waiter, seal up the floor and make good plaster
work; to touch up with gold leaf all relief ornaments on
screen at the entrance of the room and high lights of ceiling
ornament. The main hall was to be painted in parti-colors in
oil. From that point to the top of the house, including the
seventh floor, the walls and ceilings of the rooms were to be
painted and decorated in an expensive style; the woodwork
was to be painted three coats in oil, and in some of the upper
rooms the walls were to be hung with paper selected for that
purpose. Without describing the contemplated improvements
in further detail it will be 'sufficient to say that the contract
provided for overhauling, painting and decorating the whole
of the interior of the hotel from top to bottom in an attrac-
tive and expensive style, both as to workmanship and mate-
rial. The contract provided that the plaintiff should be paid
for the work and materials embraced in the contract the sum
of $8,023.82. Immediately after the execution of this con-

tract, the plaintiff entered upon its performance and fully performed the same. The work was carried on almost continuously from that date until the middle of October following, when the same was completed to the satisfaction of the tenant and accepted by him. But the tenant failed to pay to the plaintiff the sum specified in the contract, or any part thereof, and within the time allowed by statute the plaintiff filed a lien against the premises, a copy of which was served upon the defendant, the owner.

The plaintiff acquired a lien upon the property benefited under the first section of the act for the better security of mechanics, laborers and others who perform labor or furnish materials for buildings, providing the work was performed and the materials furnished *with the consent of the owner.* (Laws of 1885, § 1, chap. 342, as amended by Laws of· 1895, chap. 673.) By the twenty-fifth section the act is declared to be a remedial statute, to be construed liberally to secure the beneficial interests and purposes thereof; and a substantial compliance with its provisions is declared to be sufficient for the validity of the lien. On the trial of the action before the court at Special Term it was found, as matter of fact, that the labor was performed and the materials furnished with the consent of the defendant, and a judgment declaring the lien and directing the foreclosure of the same was entered upon this decision. But this judgment has been reversed by the learned court below on appeal, and the plaintiff has appealed to this court. The only question involved in the controversy was whether the defendant had consented to the improvement upon his property. That question was essentially one of fact, and it may be of some importance here to mention what appears from the record, that in about two months after these improvements were completed, or, to be accurate, in the month of December, 1896, the defendant re-entered and repossessed himself of the demised premises, and thus his property has had the entire benefit of the expenditure made by the plaintiff thereon, and the defendant is now in the enjoyment thereof. How or in what particular manner the defendant regained

possession in so short a time after the execution of the lease for ten years the record does not disclose, but we may assume that it was in consequence of a default by the tenant either in the payment of the monthly installments of rent, or for a failure to observe some of the other stringent covenants in the lease. However that may be, the general fact appears that within two months from the time the plaintiff had completed an expenditure for labor and materials of over eight thousand dollars upon the defendant's property, he resumed the possession and enjoyment of the same.

The learned court below doubtless had the power to reverse the judgment of the trial court upon the facts, but it has not done so, or at least no statement to that effect appears in the body of the order, and under the provisions of section 1338 of the Code, this court must presume that the reversal was upon a question of law. Prior to the revision of the Constitution, which went into effect in 1895, and the amendment to this section of the Code which followed, this court had the power, when there was a reversal below upon the facts, to review the decision, but by the amendment to the Code referred to that power was abolished and the jurisdiction of this court has been limited to the review of questions of law; and since our jurisdiction now depends in cases of this character upon the form of the order, a compliance with its provisions is more important than ever. The question of law upon which the learned counsel for the defendant mainly relies in order to sustain the reversal is, that the finding of the learned trial court to the effect that the improvement upon the building was made with the consent of the owner is not supported by any evidence whatever, and this brings us to an examination of the proof on that question and the law which defines the nature of the proof required in order to warrant a finding that the consent of the owner has been given within the meaning of the statute.

In the first place it should be noted that the tenant was under no obligation whatever to make this improvement. He was permitted by the terms of the lease to make necessary

repairs. It is true that these repairs were to be made at his expense, but the consent of the owner was given in the lease to the tenant at least to do something in the way of repairs or improvements, and the fact that the tenant was to make these necessary repairs at his own expense does not alter the fact that the owner gave his consent in the lease. But it cannot very well be claimed that the contract in question provided simply for necessary repairs. The expenditure upon the property involved not only the decorating, painting and oiling of the whole interior of the house in an expensive style, but also permanent changes in the interior walls and woodwork. The proof on the part of the plaintiff, given by its manager and also by the tenant and others, tended to show that the plaintiff's representative supervised the work during the entire time that it was in progress, over five months; that the defendant was in attendance constantly examining the work as it progressed and that he was familiar with every detail of the work in every room and part of the building. He frequently expressed himself in admiration of the beauty and good taste of the decorations and other changes made. Indeed, if the consent of the owner is to be inferred or implied at all from the entire course of conduct, it would be difficult to find a case where the proof could be more satisfactory than this. There was not only an omission on his part to make any objection to what was being done from day to day throughout a period of over five months, but he repeatedly expressed himself as pleased with what was being done for the improvement of his property, and the fact that all the work reverted to him within a few weeks after its completion explains the interest which he manifested in the work as it progressed. But it further appears that before the tenant entered into the contract, he procured the plaintiff to decorate one or two rooms in order to furnish a specimen of the work and then called the attention of the defendant to the work, which was thus furnished as a sample, and informed him that he was to enter into a contract with the plaintiff for the decoration of the whole house in that style. It does not appear

that the defendant either assented or objected to this proposition, but it does appear that immediately after making the contract the tenant informed the defendant that he had made it and that the work " was going to cost a lot of money and that he (defendant) ought to pay part of it." In answer to this the defendant said, " Well, I will see how well it is done."

The question now is, whether, in view of the permission in the lease and the defendant's attitude and conduct towards the work during all the time that it was in progress, it can fairly be said that there was no evidence to submit to a jury or to a court from which it could be implied or inferred that the improvement was made with the defendant's consent. It seems to me that we would have to give an extremely artificial and unreasonable construction to the provisions of the statute which gives the lien, when the work is done, with the consent of the owner, in order to uphold the reversal by the learned court below of the plaintiff's judgment. If the lease was not in itself an expression of consent by the defendant, what is to be said of his conduct during the five months while the work was in progress under his eye from day to day and with knowledge on his part that it was being performed by the plaintiff under a contract with the tenant? It must be presumed that he knew the law, and, therefore, knew that his property would be made liable for the improvement upon it if done with his consent, and, knowing all this, can it be said, in fairness or reason in a court of equity, that an owner may look on without objection for a long period of time while the work is in progress, that he may praise, admire and approve of it, although he knows that the tenant expects him to bear the expense, or at least some part of it, and then when the work is done, at a large expense, resume the possession and enjoyment of the premises, and say to the mechanic or material-man that the property is not liable because the owner has not consented to the work embraced in the contract? It seems to me that, under the numerous decisions of this court and of other courts, the evidence in this case was sufficient to warrant the learned trial judge in finding that the work and material,

for which the lien in this case was filed, was done and furnished with the defendant's consent within the meaning of the statute.

A brief review of a few of the cases in this court will amply support this conclusion. In *Huested* v. *Mathes* (77 N. Y. 388) the real estate of a married woman was subjected to a lien where the improvement was made under a contract with her husband. It was there held that the consent of the owner might be implied from her knowledge of the work and the absence of any objection on her part.

In *Burkitt* v. *Harper* (79 N. Y. 273) the improvement was made by a tenant under a lease, as in this case, by permission from the landlord. The improvement was to be made at the expense of the tenant, and was to revert to the landlord at the expiration of the term. The owner lived near the premises, saw the building from time to time while the lienor was engaged in its erection and made no objection. It was there held that the consent of the owner to the improvement upon his property might be implied or inferred, and the judgment of the court below in favor of the lienor was affirmed.

These cases were reviewed and approved in *Otis* v. *Dodd* (90 N. Y. 336). That case is quite instructive upon the question now under consideration. It there appears that the tenant covenanted with the owner to construct some buildings upon the demised premises, to be used in its business, but to attach to the freehold and revert to the landlord at the expiration of the term. It was said in that case that the legislature clearly intended to enforce the equitable principle, that one who knowingly takes the benefit of the property or labor of another in the form of improvements made upon his lands ought to have the lands subjected to a lien for the value thereof. The judgment of the court below upholding the mechanic's lien upon the premises under such circumstances was affirmed. The doctrine of these cases has been repeatedly approved and followed in this court. (*Schmalz* v. *Mead*, 125 N. Y. 188; *Miller* v. *Mead*, 127 N. Y. 544; *Cowen* v. *Paddock*, 137 N. Y. 188.) In the case last cited the

preceding cases were reviewed, and the rule stated in the following language : " While it is doubtless true, that the consent required by the Lien Law need not be expressly given, but may be implied from the conduct and attitude of the owner with respect to the improvements, which are in process of construction upon his premises ; still the facts from which the inference of a consent is to be drawn, must be such as to indicate at least a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they are employed." We may, therefore, fairly deduce from the decisions of this court upon the question now under consideration the following propositions: (1) That no express consent is necessary on the part of the owner in order to bring the case within the statute providing for mechanics' liens. (2) That a consent may be implied from the conduct and attitude of the owner with respect to the improvements which are in process of construction upon his premises. (3) The facts from which the inference of consent is to be drawn must be such as to indicate at least a willingness on the part of the owner to have the improvements made or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they are employed. (4) The omission of the owner to object to improvements made upon his premises by a tenant, when he has knowledge of the circumstances under which they are being made, is always an important fact bearing upon this question. I am unable to distinguish this case in principle from those referred to. Indeed, it may be said that this case is quite as strong, if not stronger, in favor of the lienor than any of them. When we consider that the work was in progress during several months, and the owner was a constant visitor at the building where it was being performed and manifested an interest in it, which to the plaintiff's manager was explainable only upon the theory that he had not only given his consent to the improvement, but was anxious that it should be made, it is reasonable to hold that he consented.

The case of *Spruck* v. *McRoberts* (139 N. Y. 193) has no

application to this case. In that case a trespasser, claiming title hostile to the true owner, assumed to make improvements upon the property. The fact that the true owner knew that the improvement was to be made under such circumstances was held to be no proof of his consent. He was not in possession or control of the property ; he had been ousted by the wrongdoer, and the contractor was, therefore, held to have done the work at his own risk or upon the credit of the wrongdoer, who had employed him. Nor has the case of *Hankinson* v. *Vantine* (152 N. Y. 20) any application. In that case the lease expressly provided that the tenant should not make any alterations without the consent of the owner. Subsequently the owner gave the consent that the tenant might make certain alterations at his own expense, but, in fact, the alterations made were other than those expressed in the consent, and, moreover, it appeared that the work was done without the knowledge of the owner, and it did not appear that it was to be of any actual benefit to the property. We think, therefore, that it cannot fairly be held that the finding of the learned trial judge, to the effect that the work in this case was done with the consent of the owner, is unsupported by any evidence.

Various exceptions appear in the record, taken to rulings at the trial, admitting or excluding testimony offered. None of them seem to have been noticed in the court below. We have examined them all and find they present no questions of sufficient importance to warrant the reversal below.

The order and judgment of the Appellate Division should, therefore, be reversed and the judgment of the Special Term affirmed, with costs.

Parker, Ch. J., Haight, Cullen and Werner, JJ., concur ; Gray and Landon, JJ., dissent.

Order and judgment reversed, etc.