(57 App. Div. 552.)

### RICE v. CULVER et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1901.)

MECHANIC'S LIEN—IMPROVEMENTS ON LEASED PREMISES—CONSENT OF OWNER.
 Laws 1897, c. 418, § 3, provides that persons performing labor or furnishing materials for the improvement of real estate with the consent of the owner or his agent shall have a mechanic's lien thereon. A landowner leased the property for an athletic field, and the lessee was authorized to remove all buildings and appurtenances which he should place thereon, at the termination of the lease. Various buildings and improvements in fitting the grounds for the purposes contemplated in the lease were made under contracts with the lessee, but the owner was present during the performance of a part of the work. *Held*, that it was error to deny a mechanic's lien to the persons constructing such improvements, on the ground that the owner had not consented thereto, since the consent of the owner to the construction of the improvements could be inferred from the lease and his presence while the work was being performed.

Appeal from special term, Monroe county.

Action by Teresa Rice against Marvin A. Culver and others to establish and foreclose a mechanic's lien. From a judgment deny-

ing the lien, plaintiff and defendant Julius Friedrich appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John H. Hopkins, for appellant Rice.
W. H. Sullivan, for appellant Friedrich.
Chas. M. Williams, for respondents.

WILLIAMS, J.    This action was brought to establish and foreclose a mechanic's lien upon real property known as "Culver Field," in the city of Rochester, N. Y.    The respondent Culver was the owner and lessor of the property, and the defendant the Rochester Exhibition Company was the lessee thereof.    The labor and materials were performed and furnished upon the property under contracts with the lessee alone, but it was claimed that they were so performed and furnished for the improvement of the property, and with the consent or at the request of the owner, and that therefore the appellants were entitled to have liens upon the respondent's interest in the property, as owner thereof.    The controversy was mainly over this question.    The trial court found that there was no such consent or request as to give the right to such liens, and denied this relief to the appellants.

The statute under which the liens were sought to be established is section 3, c. 418, Laws 1897, as follows:

"Sec. 3. Mechanic's Lien on Real Property. A contractor, sub-contractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

The question before this court is whether the finding of fact that there was no consent or request of the owner, giving a right to the liens in question, under this statute, was supported by the evidence in the case, or whether such finding was against the evidence.    Our attention is called to very many cases decided in the courts of this state relating to the meaning of the words "consent" and "request," as used in the statute, and the circumstances under which such consent or request should be found.    The latest expression of the court of appeals upon this subject is in the case of Wall-Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 293.    The earlier cases in the court of appeals were there reviewed and distinguished, and the following propositions were laid down:    (1) No express consent is necessary on the part of the owner to bring the case within the statute; (2) a consent may be implied from the conduct and attitude of the owner with respect to the improvements which are in process of construction; (3) the facts from which the inference of consent is to be drawn must be such as to indicate a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which

they are employed; (4) the omission of the owner to object to im-
provements made upon his premises by a tenant, when he has knowl-
edge of the circumstances under which they are being made, is al-
ways an important fact bearing upon this question. The question
as considered in that case was a very simple one of fact, and not one
involving intricate questions of law, as one would be led to suppose
it would be from a mere casual view of the numerous cases decided
and reported in the books. There was a lease in that case which
gave the tenant the right to make necessary repairs, but at his own
expense. The court was, however, of the opinion that no such ex-
tensive repairs as those actually made were within the contempla-
tion of the parties in making the lease. Therefore consent could
hardly be inferred or found from the lease alone. The owner and
lessor, however, was cognizant of the repairs proposed and con-
tracted for by the tenant, and was present and saw them being made
during a period of five months, and approved of them; and soon
after they were completed he took possession of the property under
some provisions for forfeiture of the lease, and had the full benefit
of the improvements, costing over $8,000. The trial court found
the fact of consent. The general term reversed on the ground that
there was no evidence to support the finding, and the court of ap-
peals reversed the general term and affirmed the trial court, holding
that consent could be inferred and found from the terms of the lease
and the circumstances attending the making of the repairs, though
there was no express consent in the lease or otherwise to the mak-
ing of repairs to the extent they were made. It does not seem to be
necessary for us to consider or discuss the many cases referred to by
counsel, in view of the decision we have referred to, and the review
of the cases therein contained. The question here is purely one of
fact. The lease was for five years, with provisions as to renewal at
the end of the term. The rent was $1,500 per year. It was agreed
that the property should be used for no other purposes than the con-
struction, use, and maintenance of a general athletic field, with ap-
purtenances; that the lessee should keep the property in good re-
pair during the term, and leave the same in as good condition as
when taken, excepting reasonable use and wear, and trees neces-
sarily removed in preparing the property for the use for which it was
leased; and that the lessee should have the privilege of removing
from the property any and all buildings, erections, appurtenances,
and improvements which it should cause to be erected or placed
thereon, at any time, before or upon the termination of the lease, or
renewal thereof,—such buildings, erections, appurtenances, and im-
provements to remain at all times the property of the lessee. The
lessee took possession of the property and fitted it up for the pur-
poses for which it was leased. There was water from the water-
works department introduced in the property by means of water-
pipes, and a sewer constructed to drain the property and carry off
waste water. There were buildings erected, and in them were
placed water-closets, baths, urinals, hose attachments, wash basins,
and, about the property, hose stand pipes. There were constructed a
bicycle track, baseball and football grounds, grand stands, fences,.

etc. There were trees, stumps, and stones removed from the property, and filling and grading and sodding done thereon. All these improvements were made at great expense under contracts with the lessee alone. It was proper and necessary in the preparation of the property for the use intended to be made of it, and for which it was expressly leased. The lessee owned all the buildings, erections, and improvements, and had the right to remove the same, so far as possible, at the end of the term. It must be inferred from the terms of the lease itself that the lessor had knowledge of the general nature of the erections and improvements to be made upon the property, and consented thereto. The lease contemplated such erections and improvements, and would have been of no avail for the purposes for which it was given unless they could be so made. Moreover, the owner and lessor was about the property, and saw the erections and improvements being made, during all the time the work was being performed and the materials furnished, and made no objections thereto. He personally, in writing, applied to the waterworks department for the introduction of the water upon the property, and he made suggestions or gave directions as to the moving of earth for filling purposes. It would seem that under the circumstances his consent to the making of the erections and improvements upon the property should be regarded as settled. The trial justice, in finding the contrary, must have treated the question of consent not as a single one of fact, but as involving some question of equity beyond the mere fact. In the course of the trial the court spoke of the consent as one that in equity would be binding, and evidently had in mind the language of the court used in deciding the Wall-Paper Case, 37 App. Div. 408, 55 N. Y. Supp. 1009, where reference was made to Spruck v. McRoberts, 139 N. Y. 199, 34 N. E. 896, and Hankinson v. Vantine, 152 N. Y. 29, 46 N. E. 292, and where the appellate division said the true test was whether the owner had given his consent in such a manner as to bind him, within recognized principles of equity. This language was used after quoting from the opinion in Spruck v. McRoberts some language incidentally there used. A reading of the full opinion in that case will show there was no such principle there stated, applicable to this case. The same judge who wrote the opinion in Spruck v. McRoberts also wrote the opinion reversing the Wall-Paper Case, and at the close of the opinion in the latter case distinctly stated the nature of the cases in 139 N. Y., 34 N. E., and 152 N. Y., 46 N. E., and that they had no application to the Wall-Paper Case; and we think it equally true that they have no application to the case we are here considering. The consent we are here dealing with is a statutory one, which is in no sense to be determined upon principles of equity. There may well be cases in which equitable principles would be applicable,—where, for instance, an owner might be estopped in equity from denying consent by reason of having had the full benefit of improvements made under circumstances not showing actual consent. Wall-Paper Case, 163 N. Y. 129, 57 N. E. 293. But this is not such a case. If there was consent or request established, the liens were matters of right under the statute, and in no way dependent

upon equitable principles. The appellants stand here upon their legal rights to liens under the statute, and the only question is whether there was a consent or request by the owner,—whether the trial court properly held that no such consent or request existed.

We think the court was in error in making the finding that there was no consent or request, and that for this error the judgment should be reversed and a new trial ordered, with costs to each appellant to abide event. All concur.