FRANK J. VALENTI, Plaintiff, *v.* NEW YORK THEATRE COMPANY et al., Defendants.

(Supreme Court, New York Special Term, April, 1917.)

Lease — landlord and tenant — what is meaning of " consent " — contracts — evidence — Lien Law, § 3.

There is a marked distinction between the passive acquiescence of an owner of property in that he knows improvements, which in many cases he had no right to prevent, are being made thereon, and his actual and express consent that the improvements shall be made; it is the latter that constitutes the " consent " mentioned in section 3 of the Lien Law.

A mere general consent on the part of the owner that the lessee may at his own expense make alterations and repairs does not constitute " consent " within the meaning of the statute.

Mere knowledge does not imply consent within the meaning of the statute nor do expressions of satisfaction with the work, where the landlord exercises no control or supervision over the performance of the contract.

The lease of a roof garden, rented for a motion picture theatre, contained a direct notice to every materialman and contractor that the landlord would not be liable for any work done or materials furnished unless the conditions provided for in the lease were complied with in order to hold the landlord for liens or to liability. The landlord upon the express condition that the tenant should remain primarily liable for the rent consented to the assignment of the tenant's rights under the lease and after the undertenant had entered into possession of the roof garden, which it used for ball room purposes, it contracted for its decoration with plaintiff who in an action to foreclose a mechanic's lien for the balance due him on the contract sought to hold the landlord liable on the ground that its officers and agents knew of the prosecution of the work from which it secured *no material advantage* and that certain plans were in the possession of its attorney. *Held,* that the evidence was insufficient to establish the landlord's " consent " to the improvement, within the meaning of the Lien Law.

An additional lien claimed by plaintiff for work done in fitting up the billiard room in the basement of the building

Supreme Court,. April, 1917.          [Vol. 99.

under an oral agreement made with the undertenant cannot be sustained, the original tenant of the roof garden never having been a tenant of the basement.

Action to forclose a mechanic's lien.

Louis O. Van Doren, for plaintiff.

David Gerber, for defendants.

Cohalan, J.   In an action to foreclose a mechanic's lien judgment is asked against the defendant New York Theatre Company.   This corporation owns the large theatre property between Forty-fourth and Forty-fifth streets on Broadway in the borough of Manhattan, and leases portions of it to various tenants.   The roof garden, under lease dated January 11, 1915, was leased to William Morris.   He defaulted in the payment of rent, but on September 27, 1915, by a second agreement the lease of January 11, 1915, was reinstated.   Morris thereafter assigned his lease to the defendant corporation Fifteen Twenty Broadway, Inc.   This agreement was made on the consent of the New York Theatre Company upon the express condition that Morris, the original tenant, should remain primarily liable for the rent.   An examination of the leases and other agreements in evidence shows that the landlord guarded itself against the making of improvements on the property in the following ways: (1) That no improvements should be made without first obtaining the written consent and approval of the landlord; (2) that the plans for the same should be submitted to it for consideration; (3) that there should be an approval of these plans; (4) that an indemnity bond should be given against any possible liens against the property, and (5) that there should be a waiver from any contractor with whom the tenant or anybody else dealt in respect of any work to be

done or materials to be furnished. The undertenant used the roof garden for ballroom purposes, which line of activity apparently turned out to be a failure, in consequence of which, by legal proceedings, there was an eviction of the tenant and his sublessee, Fifteen Twenty Broadway, Inc. After the latter corporation entered into possession of the roof garden it contracted for the decoration of the same with the plaintiff herein. It is undisputed that the work was performed; that the price for the same was reasonable, and that only the sum of $1,700 has been paid on account thereof. The plaintiff seeks to hold the landlord for the payment of the balance due him on the ground that the officers and agents of the New York Theatre Company knew of the prosecution of this work, and that liability flows from such knowledge. In brief, that there was an acquiescence, an inspection and approval of the plaintiff's work, and that the New York Theatre Company is the beneficiary of it. The plaintiff relies for the support of his theory upon the statute (Lien Law, § 3) and the cases of *National Wall Paper Co.* v. *Sire,* 163 N. Y. 122; *Schmalz* v. *Mead,* 125 id. 188, and *Miller* v. *Mead,* 127 id. 544. But these cases, particularly the case of *National Wall Paper Co.* v. *Sire, supra,* are not so pertinent, in view of the later decisions upon the subject under consideration. The higher courts have frequently passed upon the word " consent," as used in the statute. It has been decided that the " mere acquiescence, the erection or alteration with knowledge," is not the evidence of consent which the statute requires. It has been held that there must be something additional; that consent is not a vacant or neutral attitude in respect of a question of such material interest to the property owner. It is affirmative in its nature. *DeKlyn* v. *Gould,* 165 N. Y. 282; *Rice* v. *Culver,* 172 id. 60.

In the case of *De Klyn* v. *Gould, supra*, the court said: "The owner's interest in his real estate is not liable in every case in which to his knowledge labor and materials are furnished for erections upon his real property or alterations in the existing erections (cases cited). There are many cases in which the owner's consent has been implied from the circumstances and his declarations and acts in respect to the improvements. The appellant largely relies upon *National Wall Paper Co.* v. *Sire*, 163 N. Y. 122, and the cases therein cited, in which the owner's consent was inferred or implied. In that case it was pointed out by O'Brien, J., writing for the majority of the court, that by the terms of the lease the tenant was under no obligation to make the improvements: he was permitted to make them at his own expense; that before the tenant engaged the contractor to make them he conferred with the lessor, exhibited to him a specimen room of the decorations he intended to make throughout the whole house, and told him that he ought to pay part of it, and the lessor replied, ' Well, I will see how well it is done;' that the lessor was in attendance during the progress of the work, and frequently expressed his admiration and approval, and in a few weeks after the completion of the work dispossessed his tenant. The case before us lacks these features and has no element tending to show that the lessor misled her tenant to his extravagant outlay. This case, as well as the others he cites, indicates that mere acquiescence in the erection or alteration, with knowledge, is not sufficient evidence of the consent which the statute requires. There must be something more. Consent is not a vacant or neutral attitude in respect of a question of such material interest to the property owner. It is affirmative in its nature. It should not be implied contrary to the obvious truth,

unless upon equitable principles the owner should be estopped from asserting the truth." In the case of *Rice* v. *Culver,* 172 N. Y. 60, the court said: " The work for which the plaintiff's lien was filed consisted of plumbing work and material, and was furnished under a contract between her and the exhibition company dated April 27   *   *   *. The question to be determined in this case is the meaning to be given to the term ' consent.' Doubtless, in a certain sense of the word, the appellant did consent to the performance of the work done on his property, for at the time of the execution of the lease he must have known that the lessee intended to make erections thereon in order to use the premises for the purposes for which they were let. But a similar situation is presented in the great majority of demises of real property. If there is a building on the premises the tenant is, in the absence of an express covenant on the subject, required to keep the premises in ordinary repair. (Taylor on Landlord & Tenant, sec. 43; *Suydam* v. *Jackson,* 54 N. Y. 450.) It seems that in this state a tenant may erect a new edifice on demised premises, provided it can be done without destroying or materially injuring other improvements, without the consent of the landlord or being subject to the charge of waste. (*Winship* v. *Pitts,* 3 Paige, 259.) Even in the case of existing structures, while the law precludes with some strictness the tenant from making alterations, there is a large field in which he may, without the permission of the landlord, make improvements beneficial to his use, unless they constitute a permanent injury to the estate. It could not have been intended by the legislature (if it had the power) to enact that by the mere demise of land the property of the owner should be subjected to the cost of structures or improvements which the tenant would have the right to erect by

virtue of his estate under the lease. There is a marked distinction between the passive acquiescence of an owner in that he knows the improvements are being made, improvements which in many cases he had no right to prevent, and his actual and express consent or requirement that the improvement shall be made. It is the latter that constitutes the consent mentioned in the statute. To fall within that provision the owner must either be an affirmative factor in procuring the improvement to be made, or having possession and control of the premises, assent to the improvement in the expectation that he will reap the benefit of it. * * * '' The fact that some of the officers and agents of the New York Theatre Company were present in the roof garden during the progress of the work and the further fact that certain plans were in the possession of an attorney for the landlord are not sufficient in this case to make the consent and the 'acquiescence effective. A mere general consent on the part of the owner that the lessee may at his own expense make alterations and repairs does not constitute consent within the meaning of the Lien Law. Mere knowledge does not imply the consent mentioned in the statute, nor do expressions of satisfaction with the work where the landlord exercises no control or supervision over the performance of the contract. *Hedlund* v. *Payne,* 60 Misc. Rep. 603. Moreover, the lease contained a direct notice to every materialman and contractor that the landlord would not be liable for any work done or materials furnished unless the conditions provided for in the lease were complied with in order to hold the landlord for liens or to liability. The plaintiff knew that Fifteen Twenty Broadway, Inc., was not the owner of the premises. He was therefore put upon inquiry to ascertain that corporation's rights as lessee. *Hankinson* v. *Vantine,* 152 N. Y. 20; *Spruck* v.

*McRoberts,* 139 id. 193. While it is not important to the decision of this case as to whether or not the landlord secured any benefits from the work done, yet there is evidence to show, after the eviction of the sub-tenant, the character of the premises was changed. The roof garden was rented not for ballroom purposes or dancing, but for a motion picture theatre, and for that purpose the room was turned into an auditorium, with seats. This fact being true, the landlord did not secure any material advantage by the decorations which were made. The plaintiff claims an additional lien for work done in fitting up the billiard room in the basement of the building. There is no evidence in the case of any lease on behalf of the New York Theatre Company to any one of this billiard room. The agreement with respect to its decoration was orally made with representatives of Fifteen Twenty Broadway, Inc. I am of opinion, therefore, that because Morris, the original lessor, was never a tenant of that portion of the building, the lien for the work performed therein may not be sustained. On the whole case the complaint, so far as the New York Theatre Company is concerned, is dismissed.

Ordered accordingly.