JOHN PETRILLO, Plaintiff, *v.* PELHAM BAY PARK LAND CO., INC., and Others, Defendants.

Supreme Court, Bronx County, July, 1922.

**Mechanics' liens — foreclosure — contract of sale of real estate — improvements by vendee before closing title — when consent of vendor to improvements cannot be implied — failure to show benefit to vendor.**

The defendant land company as vendor entered into a contract of sale of certain lots with defendant construction company as vendee in July, 1921, the deed to be delivered on or before October 1, 1921.   The contract contained the following clause: " It is understood and agreed that the party of the second part is given the privilege of erecting not more than four houses on said premises before the delivery of the deed; provided, however, the individual and personal guarantee is given by Oluf Nielson and Arthur N. Davis, who are the president and treasurer respectively and the principal stockholders of the party of the second part, and such guarantee shall also be signed by all other persons who may become stockholders later on, that in case any mechanics' liens are filed

against said property, they will remove or cause said liens to be removed at their expense and will indemnify the party of the first part against any loss or damage which they might sustain by reason of the existence of such liens."

Before title was closed the vendee under the contract of sale entered into an agreement with the plaintiff to excavate and to build foundations for four houses to which agreement the vendor under the contract of sale was not a party.

The plaintiff brings this action to foreclose a mechanic's lien for labor and material furnished in excavating and building foundations for the houses under the agreement referred to and claims that the interest of the defendant, the vendor under the contract of sale, in the lots in question is subject to plaintiff's lien because of the alleged consent of the vendor to the improvements; that the vendee has a lien on the vendor's interest in the land for the work performed by plaintiff and that as plaintiff's liens are valid against any interest the vendee may have such liens attach under such interest or lien of the vendee against the interest of the vendor. *Held,* that consent cannot be implied unless the vendor obligates the vendee to whom possession is given to construct the improvement; that the permission to build under the contract of sale does not relate to specific improvement and is indefinite on its face and there is nothing to show that the work done benefited the vendor; that if plaintiff succeeded to the rights of the vendee due performance of the contract by the vendee or its equivalent must be shown as a condition precedent to foreclosure by the vendee or any one succeeding to his rights; that plaintiff has failed to show his right to any lien against the vendor.

ACTIONS to foreclose mechanics' liens.

*J. D. Toomey,* for plaintiff.

*Seacord, Ritchie & Young (Albert Ritchie,* of counsel), for defendant Pelham Bay Park Land Co., Inc.

*Stoddard & Mark (Yorke Allen,* of counsel), for defendant Anoka Construction Co., Inc.

GAVEGAN, J. These are several actions having the same plaintiff and defendants, in each of which plaintiff seeks to foreclose a mechanic's lien.

The question to be determined is whether the liens affect the interest of defendant Pelham Bay Park Land Co., Inc., in the four parcels of realty, embracing ten lots, against which the notices of lien were respectively filed.

A contract for the sale of eighty-four lots, which include the ten lots referred to, was made between that corporation, as vendor, and defendant Anoka Construction Co., Inc., as vendee. The contract is dated July 6, 1921. The purchase price was to be paid partly in cash and partly by the vendee executing a purchase-money bond and mortgage. It was agreed that cash payments would be made on July 6, 1921, September 1, 1921, and at the time of closing title, the contract providing for the delivery of the deed " on or before " October 1, 1921. The property was to be conveyed subject to restrictions against nuisances, business uses,

tenements, flat roof dwellings, and subject to restrictions relating to the size of building sites, to setback improvements and their cost, and to fences.

The vendee procured plaintiff to furnish labor and material for excavating and putting in foundations for four houses which the vendee decided to build on the parcels of land referred to in the notices of lien which were subsequently filed by plaintiff. His alleged liens are for the amounts due him for said work. The agreement for it was made between him and said vendee. The defendant owner, the vendor under the said contract for the sale of the lots, is not a party to the agreement for such improvements.

The interest of the vendor in the four parcels mentioned above is claimed by plaintiff to be subject to such liens because of the alleged consent of the vendor to the improvements. No request by it is asserted.

In support of his contention plaintiff relies principally on a clause of the said contract for the sale of lots which reads as follows: " It is understood and agreed that the party of the second part is given the privilege of erecting not more than four houses on said premises before the delivery of the deed: provided, however, the individual and personal guarantee is given by Oluf Nielson and Arthur N. Davis, who are the president and treasurer respectively and the principal stockholders of the party of the second part, and such guarantee shall also be signed by all other persons who may become stockholders later on, that in case any mechanics' liens are filed against said property, they will remove or cause said liens to be removed at their expense and will indemnify the party of the first part against any loss or damage which they might sustain by reason of the existence of such liens."

The " guarantee " referred to was executed by Nielson and Davis, it bearing the same date as the contract. It is in the form of an indemnity agreement and provides that if " mechanics' liens are filed against the property," the obligors " agree to remove the same or cause the same to be removed " at their expense.

No evidence was offered by any party but plaintiff. It must be conceded that if the vendee has any interest in the parcels it began to improve such interest is subject to liens as claimed by plaintiff. But we are now principally concerned with the effect, if any, of the liens against the interest of the vendor. The respective rights of the vendor and the vendee in the property may depend upon whether the contract between them was carried out. However, we are not discussing their respective rights in or to the land. This is mentioned on account of assertions of plaintiff as to the effect of absence of evidence showing default by the vendee.

That there was such default is apparent from the briefs. If the state of the record required me to find for plaintiff on some presumption that the vendee is in full performance of the contract with the vendor, I would consider it necessary to reopen the case so that the record would completely disclose the facts. But that will not be necessary.

Plaintiff asserts that the vendee is, presumptively, in full performance of its contract with the vendor; that the vendee has a lien on the vendor's interest in the land for the work performed for the vendee by plaintiff; and that as plaintiff's liens, respectively filed against said parcels of land, are valid against any interest the vendee may have, such liens attach to such interest or lien of the vendee against the interest of the vendor. Thus plaintiff would work out liens in his favor against the interest of the vendor. The theory of such liens is not that the vendor's interest is subject to liens in favor of plaintiff because of the vendor's consent to the work. It rests on the right of plaintiff to liens against the interest of the vendee. Assuming that the vendee's interest would, if it had duly performed its contract with the vendor, be a vendee's lien, it is part of plaintiff's case to show that the vendee has rendered the vendor due performance. On this theory plaintiff would merely succeed to the rights of the vendee. He would have to establish such rights and all conditions precedent thereto, just as the vendee would have to establish them if it were seeking to enforce them. Conceding to plaintiff that there might be a vendee's lien, due performance by the vendee or its equivalent must be shown as a condition precedent to foreclosure by the vendee or any one succeeding to its rights.

However, our principal concern now is with the sufficiency of the vendor's consent to plaintiff's work, as a basis for liens against the interest of the vendor in the four parcels against which the notices of lien were directed.

The statutory provision is section 3 of the Lien Law. The word " consent " there used is given a limited application. The consent which may always be implied from knowledge of the vendor that improvements are to be made by a vendee in possession is not sufficient. This is pointed out in *Rice* v. *Culver*, 172 N. Y. 60, 65. The statutory " consent " is not necessarily to be implied from every express permission to build, even though it be in writing. On the other hand, it may be found by implication, even though it was expressed neither orally or in writing.

In *Beck* v. *Catholic University*, 172 N. Y. 387, the contract of sale contained a provision, reading: " It is further understood and agreed that the vendee shall have the right of immediate

possession to the property hereinbefore mentioned and described for the purpose of erecting buildings thereon." This was held not to be a consent to the building constructed, it being said, at page 391, " It is quite evident that the university had knowledge of the fact that the defendant Dexter intended to improve the property by the erection of a building thereon. There was, however, no proof of any knowledge upon its part as to the character of the building to be erected, of the erection of the building constructed, or that the university acquiesced therein. Proof of the existence of that knowledge was insufficient to establish a consent, under the Lien Law, to the erection of any building which the vendee should conclude to or did erect."

In *Vosseller* v. *Slater*, 25 App. Div. 368, the contract provided that the vendee should " have the privilege to remove the cottage from where it now stands on said premises to and place the same upon the northeasterly thirty feet of said premises fronting on Delevan avenue." Id. 369. It was held that the plaintiff's assignor, who performed labor and furnished materials in moving and altering the dwelling under a contract with the vendee in possession, acquired no right to a lien against the interest of the vendor.

It seems to be the rule of the case just cited that the " consent " necessary to subject the vendor's interest to a lien, for the price or value of improvements to the land, erected at the request of a vendee in possession, may not be implied unless the vendor obligated the vendee to construct the improvements, though there is some language in the opinion which tends to qualify such statement of the rule of that case. The statutory provision there discussed was section 1 of chapter 342 of the Laws of 1885. It is somewhat different from section 3 of the Lien Law; but in the present connection it could not have any different effect. In the *Beck* case the Court of Appeals pointed out that the vendee was not obligated to the vendor to make the improvement. In *Rice* v. *Culver, supra,* 65, it is said: " There is a marked distinction between the passive acquiescence of an owner in that he knows the improvements are being made, improvements which in many cases he has no right to prevent, and his actual and express consent or requirement that the improvement shall be made. It is the latter that constitutes the consent mentioned in the statute."

If it is the rule that the requisite " consent " cannot be implied unless the vendor obligates the vendee, to whom possession is given, to construct the improvement, the reason of the rule is somewhat historical and is based upon the evil at which the statutory provision, as to the " consent " of the owner, was originally directed. This is explained in *Vosseller* v. *Slater, supra.* The

rule indicated is apparently accepted by text writers to be the authoritative interpretation of our statute. See Ray Mechanics' Liens, 279; Snyder, "The Lien Law" (6th ed.) 68, and the note at 11 L. R. A. (N. S.) 764.

The owner who binds one in possession of his land to make improvements must be held to have consented to them. But it is quite another thing to say that the statutory consent cannot be implied unless, by virtue of the contract between the parties, the owner can require the improvement to be made.

There have been cases where such consent has been implied as to improvements which the person in possession was not obligated to make. But they are regarded as strictly limited in their application. The case of *National Wall Paper Co.* v. *Sire*, 163 N. Y. 122, is an example. With reference to that case it is said in *Rice* v. *Culver*, 172 N. Y. 60, 68, that the lessor there participated in procuring the work to be done. That rather overstates the facts, as they are indicated from the opinion in *National Wall Paper Co.* v. *Sire, supra.* But it indicates that only in the most extreme cases will a consent to improvements be implied, under section 3 of the Lien Law, if the person in possession is not obligated, by the person against whose interest a lien is claimed, to make the improvements.

In this case the vendee did not contract with the vendor to construct the improvements towards which plaintiff furnished labor and material. But even assuming that the absence of such obligation is not fatal to plaintiff's claim to liens against the interest of the vendor, I do not believe that the consent here was to the specific improvement.

In *Beck* v. *Catholic University, supra,* it is observed, at page 391, " that, while there was consent by the vendor that the vendee should have the right of possession for the purpose of erecting buildings thereon, there was no consent whatever to the construction of the particular building erected." Plaintiff here insists that there was a consent to particular buildings, relying on the provision quoted above from the contract, on the statement of restrictions in the schedule attached to the contract and on the fact that the indemnity agreement was actually executed and delivered by Nielson and Davis.

The contract provides that the vendee " is given the privilege of erecting not more than four houses on said premises before the delivery of the deed." This permission to build " not more than four houses " does not relate to specific improvements and is indefinite on its face. Under it the vendee might erect one building or four. It does not, therefore, relate to any particular building

or buildings. Nor does the contract provide that the houses referred to shall be located on specified lots. The vendee is merely permitted to erect from one to four buildings on such parts of the eighty-four lots as may be appropriate to its purposes and permissible under the restrictions.

It is said that the character of the buildings is so fixed by the restrictions that the houses are, in effect, described by the contract, with the result that the vendor has consented to the making of specific improvements. But an examination of the restrictive provisions shows that the only reference to any physical element of the buildings which may be erected is found in the provision that " no flat roof dwelling " shall be erected. So that the fullest statement of the " privilege " of the contract is that it permits the erection of one-family dwellings, not of the flat roof type, to cost not less than the stated minimum, to be erected upon not less than certain specified areas or lots and to conform to setback requirements. From those provisions it is impossible to visualize, to any definite degree, the buildings which may be erected. It is clear that they do not have the effect of making the permission relate to specific improvements.

The execution of the agreement by Neilson and Davis, by which they agreed to save the vendor harmless against mechanics' liens and to remove liens filed, would have greater weight, as tending to show a consent to specific improvements, if it had not been executed simultaneously with the contract for the sale of the lots. On the day of the execution of both those instruments the houses referred to in both became no more definite or specific by reason of the execution of the indemnity agreement. The permission to build was not rendered more definite, nor did it relate more particularly to specific buildings contemplated by the parties, because of the execution of that agreement. Had it been subsequently executed it might be argued with more force that the parties contemplated a general consent, such as there was in the *Beck* case, when the contract for the sale of the lots was made, and that this consent became definite by the subsequent execution and acceptance of the indemnity agreement. This would be particularly so if in the interim plans for one or more of the buildings had been prepared and mentioned in the bond. In view of the fact that the bond was executed at the same time as the agreement, and contains no further description of the buildings, it is clear that the bond does not make the consent to improvements less general than if there had merely been an agreement to furnish the bond, without the bond's having been delivered. The indefinite character of the consent here is also emphasized by the fact that the

" guarantee " was to be executed by persons who might subsequently become interested in the vendee corporation. The parties were evidently looking forward and did not have in mind present improvements definitely settled on. It is seen, therefore, that the existence of the bond is of no assistance to plaintiff in avoiding the effect of the decision in the *Beck* case.

That the permission was for the erection of houses " before the delivery of the deed " is unimportant in this connection. It simply shows that, though title had not closed, the vendee had permission to go into possession to the extent indicated.

That the vendor's representatives had some knowledge of the progress of the work is of no importance here. See *Vosseller* v. *Slater, supra.* In *Gates & Co.* v. *Nat. Fair & Exposition Assn.*, 225 N. Y. 142, " knowledge and general acquiescence * * * considered in connection with the covenants and agreements contained in the lease " were said to be some evidence of consent. But the covenants and agreements referred to required the expenditure of certain stated amounts in improvements. The statutory consent is necessarily to be implied where the lessee or vendee is obligated by the owner to make improvements.

There is nothing inequitable in the result reached here; for it has not been shown that the work done is of any benefit to the vendor. The foundations might be quite undesirable from the point of view of another purchaser. He might desire to locate his dwellings differently, and even require the restoration of the land to its prior condition.

From some discussions as to the nature of the consent referred to in section 3 of the Lien Law, it might appear that a finding of the existence of the statutory " consent " can be made where the improvements are of benefit to the person whose interest is to be charged on the theory of " consent," though no " request " from him can be shown. This seems to be illogical. The statute makes the " consent " sufficient where there was no " request " from the person whose interest is sought to be charged with the lien. If it cannot be said that the work was performed at the owner's request, then it is sufficient to show that its performance was induced by his consent. To be logical we must find the basis of the consent in facts existing before the completion of the work.

The cases where the element of benefit is stressed all show that other features concurred. In many of them the person in possession of the land had been obligated to make the improvements. In one class of these cases the benefit of the owner is emphasized as showing that his relationship with the person, at whose request work was performed, was virtually that of principal and agent

They should be regarded as " request " cases and not " consent " cases. In *National Wall Paper Co.* v. *Sire, supra,* the element of benefit is stressed. But there it is pointed out, at page 128, that the lessor's interest was explained by " the fact that all the work reverted to him within a few weeks after its completion." It is also indicated that he allowed the tenant to continue the work on a half promise that he would pay part of its cost. As shown above, the circumstances in that case were such as to lead the Court of Appeals, in a later case, to say that the lessor participated in procuring the work to be done.

Mere benefit from the improvements to the person against whose interest a lien is claimed is not enough. This is well shown in *De Klyn* v. *Gould,* 165 N. Y. 282, another case in which *National Wall Paper Co.* v. *Sire, supra,* is explained.

I will hold that plaintiff has failed to establish his right to any lien against the interest of the vendor. Proceed accordingly.

Judgments accordingly.