Ferrara v Peaches Café LLC (2018 NY Slip Op 07925)

Ferrara v Peaches Café LLC

2018 NY Slip Op 07925 [32 NY3d 348]

November 20, 2018

Wilson, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 6, 2019

[*1]

Angelo A. Ferrara, Respondent,
v
Peaches Café LLC et al., Defendants, and COR Ridge Road Company, LLC, Also Known as COR Holt Road Company, LLC, Appellant.

Argued October 17, 2018; decided November 20, 2018

Ferrara v Peaches Café LLC, 138 AD3d 1391, affirmed.

{**32 NY3d at 351} OPINION OF THE COURT

Wilson, J.

Defendant COR Ridge Road Company, LLC (COR)[FN1] appeals from a Supreme Court judgment to bring up for review an Appellate Division order that, among other things, granted partial summary judgment against it, in favor of plaintiff Angelo Ferrara,[FN2] upholding the validity of a lien placed by Ferrara on COR's real property.
Adhering to our long-standing precedent, we hold that consent, for purposes of Lien Law § 3, was properly inferred from the terms of the lease agreement between COR and Peaches, and that the Appellate Division appropriately declined to impose a requirement that COR either expressly or directly consent to the improvements. We therefore affirm the judgment and order brought up for review.
I.
COR leased space in a retail shopping plaza to Peaches Café, LLC, in which Peaches would build and operate a full-service restaurant. The 10-year lease agreement and attached Retail Construction Exhibit imposed several requirements on Peaches regarding the electrical work involved in the construction of the restaurant site, stating that: [*2]Peaches "shall retain competent and skilled contractors for the completion of" the electrical work; Peaches "shall use only contractors approved by [COR]"; Peaches "shall not make . . . any . . . improvements . . . without first obtaining the consent of [COR]"; Peaches "shall retain the services of a competent experienced architect(s) and engineer(s)"; Peaches "shall provide [COR] with detailed plans and specifications for the build-out of improvements to be constructed in the [p]remises"; the design drawings that Peaches was to submit "shall include" electrical plans; the design drawings "shall be revised" according to any proposed changes by COR, which it retained the right to do; and Peaches cannot open for business unless it completes the{**32 NY3d at 352} improvements according to the lease terms and submits to COR a certificate of completion certifying that the premises were "constructed and completed in accordance with [the] final Design Drawings as approved by [COR]" (emphasis added). The lease anticipated that Peaches would substantially complete the required work within 90 days, and provided that Peaches' obligation to pay rent would commence at the end of the 90-day period, even were the work unfinished. The lease also provided that any improvements made to the "vanilla box" space would become part of the realty at the end of the lease. The lease obligated Peaches to keep its restaurant "open for business on all days and at a minimum during the following hours: Monday through Saturday 7:00 am until 6:00 pm and Sunday 7:00 am until 3:00 pm (except for holidays); (ii) adequately staff its store with sufficient employees; and (iii) utilize only those minor portions of the Premises as are reasonably required therefor for office purposes," and further provided that Peaches' failure to do so would constitute a default, entitling COR to terminate the lease, retain the improvements and recover the balance of the rent due through the end of the lease term.
The agreement also outlined detailed requirements for the electrical work that is the subject of the challenged lien: it specified the type of service, the type of panel board and type of electrical system to be installed. The agreement required that, as a condition of Peaches performing the work, it must propose a schedule to COR for COR's approval, and that if Peaches did not complete the work timely, it would be responsible for any additional costs that COR incurred as a result of the delay in completing the work.
Peaches contracted with Ferrara to perform its portion of the electrical build-out work at the premises, which Ferrara satisfactorily completed. Peaches opened for business but subsequently closed, still owing Ferrara more than $50,000. Ferrara filed a mechanic's lien against the property, noticing both Peaches and COR. Two years later, upon failure to discharge the lien, Ferrara initiated this action seeking, among other things, to foreclose on the lien.
Ferrara moved for partial summary judgment on that cause of action; COR moved for summary judgment dismissing the complaint. Supreme Court, as relevant here, denied Ferrara's{**32 NY3d at 353} motion, granted COR's motion, and dismissed the complaint with prejudice insofar as asserted against COR. The Appellate Division unanimously reversed the order insofar as appealed from and granted Ferrara's motion, concluding that "consent for purposes of Lien Law § 3 may be inferred from the terms of the lease" (138 AD3d at 1393-1394 [internal quotation marks and brackets omitted]). We now affirm.
II.
COR urges that the Appellate Division erred because, as a matter of law, a contractor working for a tenant may not place a lien on a landlord's property unless the landlord has "expressly" or "directly" consented to the performance of the work, which COR says it did not do. We reject that argument; our precedents establish that the Lien Law does not require any direct relationship between the property owner and the contractor for the contractor to be able to enforce a lien against the property owner. Lien Law § 3 (as added by L 1885, ch 342, as amended) provides:
"A contractor, subcontractor, laborer, [or] materialman, . . . who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of [the owner's] agent . . . shall have a lien for the principal and interest, of the value, or the agreed price, of such labor . . . from the time of filing a notice of such lien."
The "impetus" behind the law is to provide "protection to those who furnish work, labor and services or provide materials for the improvement of real property" (West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., 87 NY2d 148, 156 [1995] [quoting floor speech by Sen. James Donovan]). Accordingly, the law "is to be construed liberally to secure the beneficial interests and purposes thereof" (West-Fair, 87 NY2d at 156 [quoting Lien Law § 23]).
To enforce a lien under Lien Law § 3, a contractor performing work for a tenant need not have any direct relationship with the property owner. Instead, "[t]o fall within that provision the owner must either be an affirmative factor in procuring the improvement to be made, or having possession and control of the premises assent to the improvement in the expectation that he will reap the benefit of it" (Rice v Culver, 172 NY 60, 65-66 [1902]). We [*3]further explained that the{**32 NY3d at 354} owner's consent or requirement that the improvement be made, rather than mere passive acquiescence in or knowledge of improvements being made, is contemplated by the statute (see id. at 65). In Rice, we concluded that the landowner could not be held liable for the work contracted for by the tenant who had leased the land to build and maintain an athletic field. Although the landowner consented "in a certain sense of the word" because he "must have known" at the time the lease was executed that the tenant planned to make improvements in order to use the property for the purpose covenanted for in the lease, that knowledge alone was "insufficient to show that the appellant consented to the performance by the plaintiff of the work for which her lien was filed" (id. at 65, 66).
However, we distinguished Rice from our prior cases "in which the tenant covenanted by the lease to erect buildings or make improvements. . . . In those cases the . . . landlord was properly held liable because not only did [the landlord] require the improvement to be made, but the improvement inured to [the landlord's] benefit, either because it reverted to [the landlord] at the expiration of the demised term or because . . . rent proceeded from its use" (Rice, 172 NY at 66-67) (distinguishing Burkitt v Harper, 79 NY 273 [1879]; Otis v Dodd, 90 NY 336 [1882]; Jones v Menke, 168 NY 61 [1901]).
Jones, decided the year before Rice, reaffirmed the rule of that line of prior cases that certain lease provisions can establish consent for purposes of Lien Law § 3:
"[A] requirement in a contract between . . . landlord and tenant, that the . . . tenant shall make certain improvements on the premises is a sufficient consent of the owner to charge [the owner's] property with claims which accrue in making those improvements, though it would not render [the] property liable for improvements or alterations beyond those specified in the contract" (168 NY at 64 [citations omitted]; see De Klyn v Gould, 165 NY 282 [1901]).
In Jones, we based the landlord's consent on contractual provisions supporting the proposition that the landlord had consented to the improvements for purposes of Lien Law § 3. In particular, we noted the contractual requirement that the tenant convert the space to a "first-class saloon," that the conversion be accomplished in a few months, and that failure{**32 NY3d at 355} to timely complete the conversion would terminate the lease and vest title to the improvements in the landlord. In that way, the owner sufficiently "consented to [the repairs] and . . . his property was chargeable with their value" (id. at 65). A similar result obtained in McNulty Bros.v Offerman (221 NY 98, 106 [1917] [holding that as long as "the liens have been confined to work called for by the lease . . . the landlords' estate may be charged to the same extent as if the owners of that estate had ordered the work themselves"]).
[1] No material facts are in dispute here. The language of the lease agreement not only expressly authorized Peaches to undertake the electrical work, but also required it to do so to effectuate the purpose of the lease—that is, for Peaches to open the restaurant for business and operate it continuously, seven days a week, during hours specified by COR. Furthermore, the detailed language makes clear that COR was to retain close supervision over the work and authorized it to exercise at least some direction over the work by reviewing, commenting on, revising, and granting ultimate approval for the design drawings related to the electrical work. We therefore conclude that, under our prior precedents, the terms of the lease agreement between COR and Peaches, taken together, are sufficient to establish COR's consent under Lien Law § 3.
III.
COR relies on our decision in Delany & Co. v Duvoli (278 NY 328 [1938]) to argue that we should adopt the position taken by certain of the Appellate Division departments in several cases it interprets as rejecting a finding of consent under Lien Law § 3 when no direct relationship between a tenant's contractor and the property owner is present.[FN3] In Delany, the defendant property owner entered into an agreement to convey the property with an option [*4]for the purchaser to take title within{**32 NY3d at 356} one year. The agreement provided that the purchaser would pay rent in the meantime, and that the agreement would be voided if the purchaser did not take title within the year. Although the agreement did not contemplate any construction work, the purchaser undertook new construction on the property.
We examined whether the owner had consented to the improvements within the meaning of Lien Law § 3, reaffirming the rule from our prior decisions that "[t]he consent required by [Lien Law § 3] is not a mere acquiescence by the owner to improvements by a lessee in possession at [the lessee's] own expense. There must be some affirmative act by the owner" (id. at 331). We determined that the owner had not consented to the improvements:
"Here there has been no compliance with the statutory requirements. The most that can be said . . . is that the owner did not object to improvements by the tenants at their own expense. That the lienors never dealt with the record owner or her agent in respect to those improvements cannot be doubted. The evidence demonstrates that the credit accorded by the lienors was to the tenants and not to the owner, that all the transactions relating to the improvements occurred between the lienors and . . . the tenants in possession, and that the tenants assured the owner that the improvements were to be effected at their own expense" (id. [emphasis added]).
The italicized portions, stripped from the balance of the decision, have been emphasized in some Appellate Division decisions to impose a requirement of a direct relationship between owner and contractor. Read properly, however, Delany simply noted that the lease did not contain any provisions requiring the tenant to undertake the improvement work made by the lienors. Absent such a provision, we looked to whether the property owner had taken any other "affirmative act" sufficient to establish consent for the purposes of Lien Law § 3. Finding none, we concluded that the owner had not consented and, therefore, that the lienors could not proceed against the landlord.
[2] Contrary to COR's argument, Delany does not stand for the proposition that consent under Lien Law § 3 requires a direct relationship between the property owner and the lienor.{**32 NY3d at 357} Instead, Delany stands for the proposition that some "affirmative act" by the landowner is required to find consent for the purposes of Lien Law § 3. Our decisions make clear that that "affirmative act" can include lease terms requiring specific improvements to the property (see Burkitt, 79 NY 273; Otis, 90 NY 336; Jones, 168 NY 61). When a lease does not require improvements, the owner's overall course of conduct and the nature of the relationship between the owner and the lienor may demonstrate consent for purposes of Lien Law § 3 (see National Wall Paper Co. v Sire, 163 NY 122 [1900]). The decision in Paul Mock, when read properly, is consistent with our precedents, as are most of the Appellate Division cases relied on by COR. To the extent that certain Appellate Division decisions relying on Paul Mock suggest that Lien Law § 3 requires a direct relationship between the landlord and the contractor to establish consent, they are contrary to our precedents and should not be followed.
For the above reasons, the judgment appealed from and the Appellate Division order brought up for review should be affirmed, with costs.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur.
Judgment appealed from, and Appellate Division order brought up for review, affirmed, with costs.

Footnotes

Footnote 1:Defendants were sued as COR Ridge Road Company, LLC a/k/a COR Holt Road Company, LLC.

Footnote 2:Quinlan Ferrara Electric, Inc., contracted to perform the work in question; it assigned its rights to Angelo Ferrara, the plaintiff in this case. We refer to both as "Ferrara" herein.

Footnote 3:The cases on which COR relies begin with Paul Mock, Inc. v 118 E. 25th St. Realty Co. (87 AD2d 756 [1st Dept 1982]), and include Interior Bldg. Servs., Inc. v Broadway 1384 LLC (73 AD3d 529 [1st Dept 2010]); Matell Contr. Co., Inc. v Fleetwood Park Dev., LLC (111 AD3d 681 [2d Dept 2013]); Drapaniotis v 36-08 33rd St. Corp. (48 AD3d 736, 737 [2d Dept 2008]); Vardon, Inc. v Suga Dev., LLC (36 AD3d 897, 898-899 [2d Dept 2007]); Elliott-Williams Co., Inc. v Impromptu Gourmet, Inc. (28 AD3d 706, 707 [2d Dept 2006]); GCDM Ironworks v GJF Constr. Corp. (292 AD2d 495 [2d Dept 2002]); Tri-North Bldrs. v Di Donna (217 AD2d 886, 887 [3d Dept 1995]); Beaudet v Saleh (149 AD2d 772, 773 [3d Dept 1989]); and Sager v Renwick Park & Traffic Assn. (172 App Div 359, 367-368 [3d Dept 1916]).