■ MARGARET O. ROMANO, Appellant-Respondent, v ST. VINCENT'S MEDICAL CENTER OF RICHMOND, Respondent-Appel-

lant, and ASTRA PHARMACEUTICAL PRODUCTS, INC., Respondent. —In an action to recover damages for personal injuries, etc., (1) the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Kings County (Clemente, J.), dated January 23, 1990, as granted the motion of the defendant Astra Pharmaceutical Products, Inc., for summary judgment dismissing the complaint insofar as it is asserted against it and all cross claims against it, and (2) the defendant St. Vincent's Medical Center of Richmond cross-appeals, as limited by its brief, from so much of the same order as denied its cross motion for summary judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that the order is reversed insofar as cross-appealed from, on the law, the cross motion is granted, the complaint insofar as it is asserted against St. Vincent's Medical Center of Richmond is dismissed; and it is further,

Ordered that defendants Astra Pharmaceutical Products, Inc., and St. Vincent's Medical Center of Richmond are awarded one bill of costs, payable by the plaintiff.

The plaintiff's decedent, a 13-month-old child, died approximately seven hours after the plaintiff administered to him Xylocaine 2% Viscous solution (lidocaine hydrochloride) which had been prescribed by a physician at the emergency room of the defendant St. Vincent's Medical Center of Richmond (hereinafter the hospital). The drug was manufactured by the defendant Astra Pharmaceutical Products, Inc. (hereinafter Astra). A laboratory analysis of a specimen of the decedent's blood and urine revealed the presence of "33 mcg/ml" of lidocaine. The toxic range of lidocaine was established to be anything over "9 mcg/ml". An unusually large percentage of lidocaine was also detected in the decedent's liver by gas chromatography. The autopsy report indicated the presence of ulcerations on the tongue and mouth of the decedent. The report stated that the decedent died from "acute lidocaine intoxication".

Astra moved for summary judgment dismissing the complaint and all cross claims as against it, on the ground that the infant's death was due to an overdose of the drug. Annexed to Astra's moving papers were the affidavits of an anesthesiologist and a pharmacologist. Both experts supported Astra's position that the infant died of an overdose of lidocaine administered by the plaintiff.

Thereafter, the defendant hospital separately moved for

summary judgment on the same ground. The hospital relied on the affidavits which Astra had submitted in support of its motion.

In opposing the motions, the plaintiff submitted her attorney's affirmation, to which were annexed the transcripts of the depositions of all parties, various medical literature concerning the drug lidocaine, and copies of the package inserts for the drug. In his affirmation, the plaintiff's counsel contended that he could not oppose the motions on the merits because discovery was incomplete. He also asserted that the infant's death was not the result of an overdose of lidocaine, but rather was due to rapid systemic absorption of the drug. The plaintiff's counsel's contention appeared to be based on the statement in the autopsy report that there were ulcerations in the infant's mouth, and a warning on the package insert stated that "Xylocaine 2% Viscous Solution should be used with extreme caution if the mucosa in the area of application has been traumatized, since under such conditions there is the potential for rapid systemic absorption". The plaintiff's opposing papers did not include the affidavit of a medical expert.

At her examination before trial, the prescribing physician testified that she had treated hundreds of children who had the same condition as the decedent with lidocaine, and that, although she observed "blisters" on the tongue and mouth of the decedent, blisters are different from ulcerations.

In reply to the opposing papers, Astra submitted, *inter alia,* a further affidavit from the pharmacologist, stating that "[w]ith rapid systemic absorption, peak blood levels are reached within minutes after administration [of the drug] and fall exponentially thereafter", and that "[i]t is medically impossible for rapid absorption to be associated with high blood levels hours later without having had exponentially higher blood levels previously". The anesthesiologist also supported this position, stating that the contention that the decedent died as a result of rapid absorption of Xylocaine administered approximately seven hours before the time of death "is without medical support and entirely inconsistent with the physical evidence and testimony in this case".

The Supreme Court granted the motion and dismissed the complaint and all cross claims as against Astra, but denied the hospital's motion. On the record before us, we affirm so much of the order as granted summary judgment to Astra. We further hold that the court erred in denying the hospital's motion.

A proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact *(see, Alvarez v Prospect Hosp.,* 68 NY2d 320; *Winegrad v New York Univ. Med. Center.,* 64 NY2d 858).* If the movant fails to make such a prima facie showing, then the motion must be denied, regardless of the sufficiency of the opposing papers *(Alvarez v Prospect Hosp., supra).*

However, once this showing has been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action *(see, Zuckerman v City of New York,* 49 NY2d 557, 562).

The plaintiff's opposing papers in the instant case were insufficient to defeat the motion and cross motion which made prima facie showings of entitlement to judgment as matter of law. The assertion that the infant died as a result of rapid absorption of lidocaine into his body is not based on any opinion of a medical expert. Except as to matters within the ordinary experience and knowledge of lay persons, in a medical malpractice action, expert medical opinion evidence is required to demonstrate merit *(Fiore v Galang,* 64 NY2d 999; *Wind v Cacho,* 111 AD2d 808).* The theory of rapid systemic absorption is not a matter within the ordinary experience of lay persons. Thus, while the plaintiff has made claims of medical malpractice which, if true, could support a lawsuit against the hospital; absent expert medical opinion evidence in her opposing papers, the hospital's motion should have been granted *(see, Wind v Cacho, supra).*

For similar reasons, the motion brought by Astra seeking dismissal of the product liability cause of action against it was properly granted. An affirmation by the plaintiff's counsel had no evidentiary value and was insufficient to defeat the motion *(Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496).

There is no merit to the plaintiff's claim that the motions should have been denied because of incomplete discovery. The record shows that the hospital complied fully with all discovery requests. In addition, the plaintiff did not appeal from an order of the Supreme Court, Kings County, dated April 6, 1988, striking various items of a notice for discovery and inspection against Astra. In any case, the requested items

could not have raised a factual question about the cause of the decedent's death.

We have not considered the plaintiff's contentions pertaining to the adequacy of the warning provided by Astra, inasmuch as that issue was not a part of the record made at the Supreme Court *(see, Broida v Bancroft,* 103 AD2d 88). Mangano, P. J., Lawrence, Rosenblatt and O'Brien, JJ., concur.