Dynaire Serv. Corp. v Embassy Terrace Inc. (2004 NY Slip Op 50307(U))

[*1]

 Dynaire Serv. Corp. v Embassy Terrace Inc.

2004 NY Slip Op 50307(U)

Decided on March 25, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 25, 2004

Supreme Court, Kings County
 
 DYNAIRE SERVICE CORP. Plaintiff, 
against
EMBASSY TERRACE INC., EMBASSY CATERERS and 401 AVENUE U, LLC, Defendants.
Index # 37829/01

For Plaintiff:
John J. Reilly
Reilly & Reilly, LLP
146 Old Country Road, Suite 106
Mineola, NY 11501 516-248-2434
For Defendants:
Joseph I. Mizrahi
449 Quentin Road
Brooklyn, NY 11223 718-627-9100

Francois A. Rivera, J.
Defendant 401 Avenue U, LLC (hereinafter "401") moves for summary judgment or, in the alternative, for partial summary judgment against the plaintiff Dynaire Service Corporation (hereinafter "plaintiff"). Plaintiff opposes defendant's motion for summary judgment and cross moves for summary judgment against the defendant. In the alternative, plaintiff moves to strike 401's demand for a jury trial. Defendant opposes plaintiff's cross motion for summary judgment.
Plaintiff is a duly licensed domestic corporation engaged in providing service and repairs for heating and air conditioning systems. This is an action to foreclose a mechanic's lien filed by plaintiff for the installation, repair and replacement of the heating and air conditioning (HVAC) systems to the real property located at 401 Avenue U, Brooklyn, New York (hereinafter "the Premises").
On December 23, 1999, plaintiff's entered into a service contract with Embassy Caterers to perform service and repairs to the HVAC equipment located at the premises. Vito Salerno signed the contract on behalf of Embassy Caterers. At the time the contract was executed, Embassy Terrace, Inc. was the owner of the real property in which the services were to be performed. Also at that time, Vito Salerno was president of Embassy Terrace, Inc. and was operating a catering business on the premises using the name Embassy Caterers.
Pursuant the terms of the service contract, the effective date was January 1, 1999 and the expiration date was December 31, 1999. The contract was to be automatically extended from year to year subject to a written, thirty-day notice of cancellation by either party. Any materials installed in connection with the service contract were to be billed separately.
On October 26, 1999 Vito Salerno, as President of Embassy Terrace Inc., entered into a contract to sell the Premises to Murray Dweck. The sales contract stipulated that the closing would occur no later than January 3, 2000, time being of the essence.
On January 4, 2000, Murray Dweck executed an assignment and assumption agreement whereby he assigned his rights and obligations as a buyer of the premises to 401. 401 assumed [*2]Murray Dweck's rights and obligations under the purchase agreement and Embassy Terrace, Inc consented to the assignment and assumption. Vito Salerno signed the agreement as president of Embassy Terrace Inc., Murray Dweck signed individually, and Eli Dweck, Murray Dweck's son, signed as managing member of 401.
 On January 4, 2000, immediately after the execution of the aforementioned assigment, 401 as owner and landlord of the premises executed a written lease agreement with Clifton Catering, LLC (hereinafter Clifton) conveying a leasehold interest in the premises to Clifton for a term of twelve months. Eli Dweck, signed the lease agreement on behalf of 401 and Vito Salerno signed the lease agreement as managing member of Clifton.
Also on January 4, 2000, Murray Dweck, 401, Embassy Terrace, Inc, and Clifton entered into an additional agreement which they named a "Survival Agreement". The purpose of the agreement was to ensure that after the closing of the contract of sale certain agreements would continue and survive the closing. Vito Salerno signed the "Survival Agreement" in two places as president of Embassy Terrace, Inc. and as managing member of Clifton. Murray Dweck signed in his individual capacity. Eli Dweck, Murray Dweck's son, signed as managing member of 401.
This agreement contained two provisions which are arguably relevant to the motion. The first is language in the contract requiring Embassy Terrace, Inc. to use due diligence to discharge or satisfy four itemized liens and encumbrances within six (6) months from the date of the agreement. The itemized liens and encumbrances included a judgment against it by the New York City Finance Department in the amount of $110.47; an unspecified lien or encumbrance against "NCT Catering Inc."; an open claim against it for state franchise and New York City general business taxes; and a federal tax lien against it in the sum of $19,348.87 plus interest and penalties. Embassy Terrace, Inc. was required to escrow the monies for the outstanding items listed above to insure payment of all outstanding liens. The second was contract language giving 401 the right to set-off against the Note as set forth in the Contract, an amount equal to any losses or damages it incurred caused by Embassy Terrace, Inc., Clifton or its principals.
From January 1, 1999 until about January of 2001, plaintiff continued to perform work on the premises in accordance with its service contract with Embassy Terrace, Inc. Plaintiff continued to deal with Vito Salerno and received payment for their service from him. Vito Salerno signed and gave business checks to plaintiff in April and August of 1999 and in June of 2000. These three checks were preprinted and bore the name "Clifton Catering LLC, DBA Embassy Terrace".
Thus, plaintiff was not made aware that ownership of the real property had changed on January 4, 2000. Furthermore, plaintiff's claim that it continued to deal directly with Vito Salerno after the change in ownership is consistent with Salerno's continued operation of his catering businesses under different names at the premises.
On May 16, 2001, plaintiff filed a notice of mechanic's lien in the Kings County Clerks Office. Plaintiff's lien alleges total charges for work performed between January 1, 1999 and January 8, 2001 to be $22,758.45. It further alleges that the sum of $12,457.71 was paid by Vito Salerno through June 19, 2000. Plaintiff claims an outstanding balance of $10,302.74.
401 does not dispute that plaintiff provided the services and labor claimed in its pleadings and for which they seek payment. Rather, 401 contends that it did not expressly or impliedly consent to the work and therefore should not be liable for payment. It is well settled that a party moving for summary judgment must make a prima facie showing that it is entitled to judgment as a matter of law (Zarr v. Riccio, 180 A.D.
2d 734, (2nd Dept. 1992)). Once a showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (Zuckerman v City of New York, 49 NY2d 557; Romano v. St. Vincent's Medical Center of Richmond, 178 A.D. 2d 467 [2nd Dept. 1991]).
New York's Lien Law is intended to protect those who directly expend labor and services for the improvement of real property (West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co., 87 N.Y.2d 148, 157, [1995]). Further, Lien Law should be afforded liberal construction to protect beneficial interests of lienors (Manniello v. Ghadimi, 279 A.D.2d 460, 461, [2nd Dept. 2001]).
[*3]
Enforcement under New York's Mechanic's Lien Law (NY Lien Law, §3) requires consent by the owner of the premises for which services and/or materials are rendered by the leinor; "in order to maintain and enforce a mechanic's lien, a plaintiff is required to demonstrate that the defendant consented to the work performed on its property. The consent required by the Lien Law is not mere acquiescence and benefit, but some affirmative act or course of conduct establishing confirmation" (Zimmerman v. Carlson, 293 A.D.2d 744, 745 [2nd Dept. 2002]). Where work and/or services are completed on behalf of a tenant, the consent contemplated is the consent given by the owner to the contractor (Tri-North Builders, Inc. v. Di Donna, 217 A.D.2d 886, 887, [3rd Dept. 1995]). Consent by the tenant to the contractor is thus irrelevant. The affirmative act required by the statute can be given expressly or impliedly; " no express consent is necessary on the part of the owner in order to bring the case within the statute providing for mechanic's liens a consent may be implied from the conduct and attitude of the owner with respect to the improvements" (National Wallpaper Company v. Sire, 163 N.Y. 122, 131, [1900]; cited by, Timothy Coffey Nursery/Landscape, Inc. v. Gatz, 304 A.D.2d 652, 653, [2nd Dept. 2003]).
Plaintiff's claims that the nature of the work performed at the premises constitutes an "improvement" (NYS Lien Law, §2(4)) to the premises that inures to the benefit of 401. These improvements, say plaintiff, were required by 401 of lessee Clifton in the lease agreement. Indeed, paragraph five of the Lease Agreement provides in pertinent part;
"the Tenant will take good care of the premises and will, at the Tenant's
own cost and expense, make all repairs . and will maintain the Premises
in good condition and state of repair, and at the end or other expiration
thereof, will deliver up the Premises in good order and condition, wear
and tear from a reasonable use thereof, and damage by the elements not
resulting from the neglect or fault of the Tenant, excepted."
(Plaintiff's exhibit nine ("9"), Lease Agreement, paragraph five ("5"))
Plaintiff further alleges that the terms of paragraph five, in requiring Clifton to effect "improvements to the premises, obviates the need for a showing that 401 made an affirmative act or participated in a course of conduct establishing consent under the Mechanic's Lien Law. Although the lease agreement does require the tenant to care for the premises, it does not establish the requisite consent contemplated under the mechanic's lien as a matter of law.
Plaintiff cites case law where "consent [was] clearly spelled out from the written words of the lease itself" (Harner v. Schecter, 105 A.D.2d 932 [3rd Dept. 1984]; see also
Osborne v. McGowan, 1 A.D.2d 924, 925, [3rd Dept., 1956]). The facts here are distinguishable. In both Harner and Osborne, the owner and lessor of real property executed a lease agreement giving the lessee unconditional authorization to erect improvements contemplated by the lease. The improvements, and any beneficial interest therein, inured to the lessor upon termination of the lease. In Osborne, the improvements contemplated by the lease were of a specialty nature, being unique to the lessee's use of the property and they resulted in new permanent structures being built on the property. The services and materials furnished by plaintiff are much different in character. Whereas the agreement in Harper and Osborne contemplated and specifically authorized the erection of new, specialty structures, the agreement here merely requires the lessee to maintain the status quo of the premises. A reasonable review of the lease agreement finds standard boilerplate language- language that does not contemplate the construction of new, permanent and unique structures. In fact the only part of the lease agreement contemplating such requires consent in writing by the lessor;

"no alterations, additions or improvements are to be made, and no climate, air, cooling, heating or sprinkler systems installed in or attached to the premises without written consent of the Landlord. Additionally, if any such alterations, improvements or installations are made, they are to become the property of the Landlord upon expiration of the lease"[*4]
(Plaintiff's exhibit nine ("9"), Lease Agreement, paragraph six ("6"))
Note, the inclusion in paragraph six inuring benefit to the lessor is not in itself consent as the lessor specifically invokes the protection of the statute of frauds. Accordingly, an affirmative act or course of conduct on 401's part must still be shown as consent to the improvements. For the purposes of ordering judgment as a matter of law, the words of the lease agreement between Clifton and 401 do not in and of themselves supply the requisite consent required under the Mechanic's Lien Law.
Neither the lease agreement nor the survival agreement can be considered as a matter of law, substitutes for the requisite express or implied consent contemplated by the Mechanic's Lien Law.
There is no dispute that Vito Salerno acting as principal for Embassy Terrace Inc had actual knowledge of the terms of the service agreement that he entered into with plaintiff. On October 26, 1999 and on January 4, 2000, while the agreement was still in effect, Vito Salerno was a party to three separate agreements affecting the ownership and possession of the premises. He signed in various capacities, a contract of sale, a consent to an assignment, a survival agreement and a lease agreement. On January 4, 2000, Murray Dweck and 401 were parties to the same assignment, survival agreement and lease agreement.
There is no dispute that Vito Salerno with the consent and knowledge of Murray Dweck continued to operate a catering business from the premise after ownership passed to 401. It is also clear that Vito Salerno as a principal of Embasssy Terrace Inc. and as managing member of Clifton had exclusive possession of the premises during all times covered by plaintiff's mechanic's lien.
While the court does not find that 401 expressly consented to the service and labor performed by plaintiff on its real property, the pleadings submitted do not support summary judgment in favor of either party as a matter of law. A genuine material issue of fact exists as to whether 401, though it conduct and multiple transactions with Vito Salerno, in his various capacities, engaged in acts which constitute implied consent to the labor and services that plaintiff performed. Neither defendant nor plaintiff has shown that they are entitled to full or partial judgment as a matter of law. Defendant's motion for summary judgment is denied. Plaintiff's cross-motion demanding summary judgment is also denied.
The court now turns to plaintiff's request to strike defendant 401's demand for a jury trial. Plaintiff's verified complaint dated October 10, 2001 has brought three causes of action. The first two are based on the notice of mechanic's lien filed with the Clerk of Kings County on May 16, 2001. The third plead an action for an account stated.
All three causes of actions are in equity and not triable before a jury. Section 43 of the Lien Law provides in pertinent part that:

 the provisions of the real property actions and proceedings law relating to actions for the foreclosure of a mortgage upon real property....apply to actions in a court of record to enforce a mechanic's lien.
Although a mechanic's lien is a statutory rather than a contractual lien and although the proceeding for its foreclosure is not an equity action but rather one of statutory creation, nevertheless, section 43 of the Lien Law mandates following generally the practice prevailing in an action to foreclose a mortgage on real property, a well recognized equity suit, the action to foreclose a mechanic's lien, at least in a court of record, is of equitable cognizance (Application of Crispino 9 Misc. 2nd 409 [NY Co. Ct 1958]).
[*5]
Section 45 of the Lien Law provides in pertinent part that:

 the court may adjust and determine the equities of all the parties to the action an the order of priority of different liens, and determine all issues raised by any defense or counterclaim in the action. It further provides that in case a counterclaim is set forth by any defendant in his answer, such defendant shall be deemed to have waived a trial by jury of the issues raised thereby.
Although defendant 401 may have counterclaimed with an action in law, inasmuch as
the foreclosure of the mechanic's lien is an action and equity, defendant is deemed to
have waived his right to a jury trial under these circumstances. Petitioner's request to strike respondent's jury demand is therefore granted (John W. Cowper v. Buffalo Hotel 120 Misc 2nd 350 [NY Sup 1983]; see also Klien v. New Deal Building 171 Misc 1058 [NY Sup 1939]).
The foregoing constitutes the decision and order of the court.
J.S.C.
Decision Date: March 25, 2004