OPINION OF THE COURT
Robert J. Miller, J.
Defendant the City of New York moves for an order, pursuant to CPLR 3212, dismissing the complaint of plaintiffs Zaair Nafiz Abdal Wali and Jaleel Abdal Wali, infants, by their father and natural guardian, Abdal Hafiz Wali, and Abdal Hafiz Wali, individually,* on the ground that the City did not own the subject premises at the time the infant plaintiffs allegedly sustained injuries due to lead poisoning and, accordingly, are not liable for such injuries as a matter of law. Both the plaintiffs and codefendant Neighborhood Restore Housing Development Fund Corporation (Neighborhood Corp.) oppose the instant motion on the ground that questions of fact exist with respect to the City’s ownership and/or control of the subject premises which preclude the grant of summary judgment to the City.
In the instant action, plaintiffs allege that they sustained injuries as a result of their exposure to lead based paint in apartment 3B of 2170 Atlantic Avenue, Brooklyn, New York (the property) from June 30, 2004 until June 26, 2006. Plaintiffs allege that at all relevant times, the property was owned, managed, maintained and controlled by the City of New York, Neighborhood Corp. and Wavecrest Management Team Ltd.
In support of its motion for summary judgment, the City submits an affidavit from David Schloss, a senior title examiner with the New York City Law Department. Said affidavit states that, upon his title search for the property, Mr. Schloss determined that record title for same was in Neighborhood Corp. from August 3, 2004 to present by deed recorded on August 3, 2004 and, prior to that date, record title was in 2170 Atlantic Ave. Housing Development Fund Corp. (Atlantic Corp.) from June 17, 1982 to August 3, 2004 by deed recorded June 17, 1982.
*480 The City further submits a copy of a judgment of foreclosure (the judgment) which was entered on February 20, 2003 in an action to foreclose tax liens held on the property by the City of New York. The judgment provides the following, in relevant part, with respect to the relationship of the City, the Commissioner of Finance and the record owner of the property:
“ORDERED, ADJUDGED AND DECREED, that the city [of] New York is the owner and holder of unpaid tax liens affecting the parcels of real property hereinafter described ... in the amounts with interest thereon as shown in the List of Delinquent Taxes [including the property] ....
“ORDERED, ADJUDGED AND DECREED, that the sale of any of the parcels [including the property] is dispensed with and the Commissioner of Finance of the City of New York is hereby authorized to prepare and execute a deed, or deeds, conveying either to the City of New York, or with respect to the class one and class two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, full and complete title to said parcels as described herein; and it is hereby further
“ORDERED, ADJUDGED AND DECREED, that upon the execution of said deed, or deeds of class one and class two real property to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the grantee shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresidents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption as provided by § 11-412.1; and it is hereby further . . .
“ORDERED, ADJUDGED AND DECREED, that upon the execution of said deed, or deeds to the City of New York, the City shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresi *481 dents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption except as otherwise provided by §§ 11-424 and 11-424.1; and it [is] hereby further
“ORDERED, ADJUDGED AND DECREED, that unless and until the Commissioner of Finance executes a deed conveying parcels of class one and class two real property [such as the property] to the City of New York or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the owners of such lands shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner, including, but not limited to, maintaining such lands in compliance with the housing maintenance, building and fire codes and all other applicable laws, however, that upon entry of judgment, HPD or its authorized agent may have access to the class one and class two parcels herein described for the purposes of conducting inspections.”
In addition, the City submits a deed and real property transfer report which evidences that, on July 9, 2004, the Commissioner of Finance transferred the deed to the property to Neighborhood Corp. Relatedly, the City submits the affidavit of Rassoul Azarnejad, an Assistant Commissioner in the Department of Housing Preservation and Development (HPD). With respect to relevant records concerning the subject property, he states the following:
“[T]he Law Department submitted a request to me to search for any and all records in HPD’s possession relating to [the property]. After deeding [the property] to 2170 Atlantic Avenue Development Corporation in 1982, there are no records that HPD managed the subject building. Neither are there any records that HPD performed a lead abatement in Apartment 3B at any point after 1982.” (Original paragraph numbering omitted.)
Based upon the aforesaid documentary and affidavit evidence, the City argues that because the property was never transferred by deed to the City or HPD, and the subject judgment specifically directed that “the owners of [the property] shall continue to have all of the rights, liabilities, responsibilities, duties and *482 obligations of an owner,” it has established, prima facie, that it did not own, occupy, possess, control or maintain the property. In addition, it maintains that even if, under the terms of the judgment, HPD retained the right to conduct inspections of the property, such performance of a governmental function does not suffice to form the basis for liability absent evidence that HPD affirmatively assumed a special duty toward the plaintiffs.
In opposition to the City’s instant motion, the plaintiffs cite to the transfer deed for the property, dated July 9, 2004, as evidence that the property was owned by the City prior to its transfer to the Neighborhood Corp. based upon the subject deed’s inclusion of Martha E. Stark, the Commissioner of Finance of the City of New York, as the “Grantor” of the property. They also submit a release of covenants and restrictions with respect to the property, dated July 9, 2004, pursuant to which HPD consented to the sale of the property, agreed to release the relevant restrictions on sale and use of the property so that it could be sold free and clear of same and also consented that such restrictions would be discharged of record, shall not be enforced by the City and “are of no further force or effect.” Finally, the plaintiffs submit a deed evidencing a transfer of the property in 1990 from the Commissioner of Finance to the City of New York. Neighborhood Corp. relies upon the same documents and concurs with the plaintiffs’ contention that said documents present a question of fact with respect to the putative ownership state of the City which precludes the grant of summary judgment to the City.
In reply, the City submits the supplemental affidavit of Mr. David Schloss, wherein he states the following with respect to the ownership of the property:
“Record title for [the property] from AUGUST 3, 2004 to the present was in [Neighborhood Corp.] by deed recorded August 3, 2004.
“Record title for [the property] from June 17, 1982 to August 3, 2004 was in [Atlantic Corp.] by deed recorded June 17, 1982.
“An in-rem foreclosure deed recorded March 14, 1990, conveyed title to [the property] to the City of New York, however, this deed was subsequently set aside and vacated by court order recorded May 14, 1990.
“A judgment of foreclosure entered February 20, 2003 and recorded June 16, 2003 authorized the *483 Commissioner of Finance of the City of New York to prepare and execute a deed [to] convey fee title to [the property] to the City of New York or a qualified third party.
“By deed recorded August 3, 2004, fee title was conveyed by the Commissioner of Finance to [Neighborhood Corp.].
“At no time subsequent to the judgment of foreclosure recorded on June 16, 2003 did the Commissioner of Finance execute a deed conveying fee title to [the property] to the City of New York” (original paragraph numbering omitted).
The City also submits copies of the May 14, 1990 order vacating its title to the property and a mortgage executed June 8, 1990 between Atlantic Corp. (mortgagor) and HPD (mortgagee). It further submits a “Fiscal Impact Statement” generated by the Finance Division of the Council of the City of New York concerning the amendment of the Administrative Code of the City of New York with respect to in rem foreclosure actions against properties for which tax arrears had been assessed. Said statement describes the in rem foreclosure process as follows:
“Foreclosure by In-Rem Action: DOF [Department of Finance] would have the authority to select particular buildings in specific sections of a borough for inclusion in an in-rem foreclosure action. Property owners would have up to four months following a judgment [of] foreclosure to redeem a property. If no redemption occurs, DOF would be authorized to execute the deed to either the City of New York or to a third party selected by the Commissioner of HPD. However, the City is not expected to take title to any of these properties.”
At the court’s request, the City has also submitted various authority, largely in the form of academic and scholarly articles, in support of its proposition that, as a matter of law, it exercised no ownership or control over the property during the relevant time period.
Summary judgment should only be granted where there are no triable issues of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). In order to prevail on a motion for summary judgment, the movant must present a prima facie case demonstrating entitlement to judgment as a matter of law (Prince v DiBenedetto, 189 AD2d 757, 759 [1993]; Zarr v Riccio, 180 AD2d 734, 735 [1992]). Once the movant has established *484 his or her prima facie case, the party opposing a motion for summary judgment bears the burden of “producing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact . . . ; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; see also Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467, 470 [1991]; Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [1991]). Stated differently, “the plaintiff must establish the existence of material facts of sufficient import to create a triable issue” (Shaw v Time-Life Records, 38 NY2d 201, 207 [1975]). In addition, the evidence presented on summary judgment must be scrutinized in the light most favorable to the party opposing the motion (Goldstein v County of Monroe, 77 AD2d 232, 236 [1980]). Since summary judgment deprives a party of his or her day in court (Henderson v City of New York, 178 AD2d 129 [1991]), it is a drastic remedy that will only be awarded when there is no triable issue of fact and the court can render a decision as a matter of law (Barclay v Denckla, 182 AD 2d 658 [1992]). Nonetheless, where a party has established his or her prima facie case, a motion for summary judgment based thereupon “may not be defeated merely by surmise, conjecture or suspicion” (Shaw, 38 NY2d at 207).
In the instant case, the court finds that the City of New York is entitled to summary judgment dismissing the complaint of plaintiffs as against it. It is well settled that “[generally, liability for an allegedly defective condition on property must be based on occupancy, ownership, control, or special use of the premises” (Schwalb v Kulaski, 29 AD3d 563, 564 [2006]; accord Quick v G.G.’s Pizza & Pasta, Inc., 53 AD3d 535, 536 [2008]; Comack v VBK Realty Assoc., Ltd., 48 AD3d 611, 612 [2008]; Noia v Maselli, 45 AD3d 746, 746 [2007]; Ellers v Horwitz Family Ltd. Partnership, 36 AD3d 849, 850 [2007]). With respect to the liability of an owner for a dangerous lead paint condition, it is well settled that
*485 If a landlord is determined to have had the requisite notice of the residency of the infant and a lead paint hazard exists in the apartment, the landlord’s liability will then depend upon the reasonableness of its efforts, if any, to remedy the lead condition (see Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 644 [1996] [construing Administrative Code of City of NY § 27-2013 (h) (1) (added by Local Law [1982] No. 1 of City of New York)]). Accordingly, the threshold issue of ownership and control of the subject property, such that notice of a child’s residency therein can be imputed to the entity alleged to be liable for such condition, must be established in order for liability to attach to same.
Here, the City has demonstrated, prima facie, that it held no ownership interest, and did not otherwise occupy or control the property, at the time the plaintiffs were allegedly injured. The City has submitted documentary and affidavit evidence that although it was the holder of a foreclosed tax lien on the property, title to the property was never transferred to it and, instead, was ultimately transferred by deed to Neighborhood Corp., a third party, by the Commissioner of Finance. Moreover, it is well settled that the interpretation of either a judgment (see generally Town of Oyster Bay v Forte, 34 Misc 2d 5, 6 [1961]) or applicable statute is an issue of law to be determined by the court (see Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 103, 105 [2007] [recognizing that “the correct interpretation of a statute is ordinarily an issue of law for the courts, especially where ‘the question is one of pure statutory reading and analysis, dependent only on an accurate apprehension of the legislative intent’ ” (quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980])]; accord Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund, 286 AD2d 734, 735 [2001]). The court finds that, in the instant case, the plain language of the judgment itself, as well as the statute pursuant to which the in rem foreclosure against the property proceeded, Administrative Code of City of NY § 11-412.1, support the conclusion that the City did not own, occupy or control the subject property at the time plaintiffs allegedly sustained their injuries and, therefore, as a matter of law, may not be held liable for same.
*484 “the landlord’s liability [for a dangerous lead paint condition] depends purely and simply on whether it had notice of a child under seven living in the apartment and when the building was built[;] . . . [the issue of] whether the landlord had actual notice of peeling paint or other indications of a hazard are immaterial” (Woolfalk v New York City Hous. Auth., 263 AD2d 355, 356 [1999]).
*485 In so finding, the court notes that the pertinent language of the judgment almost identically tracks that found in the statute upon which it is based, section 11-412.1. Both the judgment and statute provide for the Commissioner of Finance to prepare, ex *486 ecute and cause to be recorded a deed conveying either to the City or a third party deemed qualified by the Commissioner of HPD, full and complete title to any parcel of class one or two property described in the subject list of delinquent taxes, and subject to a judgment of foreclosure, after the requisite redemption period for same has expired. Pursuant to statute, prior to the recording of such deed conveying the subject foreclosed property:
“The owner of said parcel shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner of such parcel, including, but not limited to, maintaining such parcel in compliance with the housing maintenance, building and fire codes, and all other applicable laws, unless and until the commissioner of finance has prepared and executed a deed conveying to the city or to a third party full and complete title to such parcel. Upon the execution of such deed, the city or the third party shall be seized of an estate in fee simple absolute in such land” (§ 11-412.1 [c]).
The judgment provides that HPD or its authorized agent may have access to the foreclosed property prior to transfer of the deed to the City or a third party “for the purposes of conducting inspections.” Accordingly, the court interprets the judgment and the applicable statutory authority as providing a procedural mechanism whereby the Commissioner of Finance may transfer the subject foreclosed property to either the City or a third party after the requisite redemption period has passed and the Commissioner of HPD has had an opportunity to assess the qualifications of the third party to the extent a transfer of the property will be made to same.
Contrary to the arguments of plaintiffs and Neighborhood Corp., however, the court also finds that both the statute and judgment address the issue of tort liability during this transitional period of ownership of the property by explicitly providing that the owner of the property, prior to the execution and recording of a deed vesting ownership with either the City or a third party, continues to have all rights, liabilities, responsibilities, duties and obligations of an owner, including maintenance of the property and compliance with all applicable codes and laws. The plain meaning of such a provision is that ownership of the property for liability purposes remains vested in the title owner of the property until the Commissioner of Finance transfers title to the property to the City or a third party where *487 upon an estate in fee simple absolute with respect to the new owner is established. Such a reading comports with the procedural mechanism created by section 11-412.1 in that, prior to the execution of a deed in favor of either the City or a third party, the City has no legal basis for possession, occupancy, control or entry upon the property and, therefore, another entity must explicitly be designated as the owner for purposes of continued maintenance and control of same as well as any concomitant liabilities arising therefrom. Accordingly, given that the City gains ownership status only if the Commissioner of Finance ultimately transfers the deed to the property to the City, the judgment provides for a limited right of entry with respect to HPD or its agents for the limited purpose of conducting inspections. Further support for such a reading is found in the fiscal impact statement submitted by the City which unequivocally states that, as a result of the then-proposed in rem foreclosure proceeding, pursuant to which the subject property ultimately became subject to a judgment of foreclosure, “the City is not expected to take title to any of these properties.” As a result, the court finds that the City, based upon the relevant statutory authority as well as its documentary and affidavit submissions, has established, prima facie, that it was not the owner of the subject property, and did not otherwise occupy or control same, for the purposes of liability for the plaintiffs’ alleged lead poisoning injuries.
In response, the plaintiffs have failed to raise a triable issue of fact. The interpretation of the judgment and section 11-412.1 presents issues of law which the court has determined support the City’s prima facie case. To the extent plaintiffs and Neighborhood Corp. attempt to argue that inherent ambiguities in the aforesaid items raise a question of fact as to the City’s liability, the court notes that such arguments rest more upon the speculation of such parties as to why the aforesaid judgment and statute fail to include certain provisions (e.g. an explicit limitation on the City’s liability for dangerous conditions present at the foreclosed property), rather than on an interpretation of the plain language actually employed. The court notes that given the clear lack of ownership rights afforded to the City by either the judgment or statute, in the absence of the execution or recording of a deed by the Commissioner of Finance vesting ownership in same, and the specific retention by the title owner of all of the rights, liabilities, responsibilities, duties and obligations of an owner prior to such execution and recording, *488 language specifically exempting the City from liability for dangerous conditions present on the property would be superfluous and cause confusion in its own right, particularly in light of the dearth of any authority, either pursuant to the judgment or applicable statute, upon which a claim by the City to any ownership, possession, occupancy, entry upon or use of the property could be predicated. Accordingly, the court finds that neither the judgment nor section 11-412.1 contain any ambiguities sufficient to constitute a factual question which would preclude the grant of summary judgment to the City.
Moreover, to the extent the plaintiffs and Neighborhood Corp. contend that the Commissioner of Finance acted as the agent of the City for ownership purposes during the relevant time period, such argument is unavailing. It is well settled that “[i]n order to transfer an ownership interest in real property there must be a deed, or other ‘conveyance in writing’ ” (Goodell v Rosetti, 52 AD3d 911, 913 [2008], quoting General Obligations Law § 5-703 [1]). Further, “although it is not necessary that such conveyance be recorded, it is a well-established rule that delivery of the deed with intent to transfer title is required and the absence thereof will render the attempted transfer of ownership ineffective” (id. [citations omitted]). “Thus, if the intention in transferring possession of a deed is merely to have it transmitted to a third person, such as an escrow agent, there is no legal delivery which will pass title to the property” (id.). In the instant case, it is plain from the terms of the judgment that title is, in effect, held by the Commissioner of Finance via the in rem foreclosure procedure established pursuant to section 11-412.1 only for the limited duration of the statutory redemption period and any additional relevant statutory time period and for the sole purpose of transferring ownership to either the City or a third party by execution and recording of a deed accomplishing same subsequent to the expiration of such time period. The plain language of both the judgment and the applicable statute support a reading that the Commissioner of Finance is properly viewed as a mere conduit for the deed prior to its transfer to the new owner of the property and that such provisional status provides for the orderly transfer of such title to either the City or a third party deemed qualified by the Commissioner of HPD. As previously stated, the retention by the prior owner of all legal indices of ownership other than the right to transfer same, during this transitional period, further bolsters a reading that neither the City nor its agents is meant to have an ownership *489 interest in the property prior to any actual execution or recording of a deed establishing same.
In addition, the reservation of the right of HPD to inspect the property prior to the execution and recording of said deed also fails to raise a question of fact as to the City’s alleged ownership of the property and any liability arising from same. There is no indication from the judgment that the inspections noted therein are different from, or in addition to, such inspections as may be conducted in the regular course of HPD’s governmental functions or that said inspections are to be construed as analogous to the right of reentry for inspection or repair often exercised by an out-of-possession landowner. It is well settled that a governmental subdivision, such as HPD, may not be held hable for performing its official functions unless it is established that said entity established a special relationship with the allegedly injured party such that a special duty separate and distinct from its governmental role arises with respect to same (see generally Miller v State of New York, 62 NY2d 506, 510 [1984]; Gibbs v Paine, 280 AD2d 517, 518 [2001], lv denied 96 NY2d 714 [2001]; Miah v New York City Hous. Auth., 193 Misc 2d 601, 608 [2002]). Therefore, the mere retention by HPD of the limited right to conduct inspections with respect to the property does not raise a question of fact as to the City’s ownership of same during the requisite time period, particularly in light of the statutory role of HPD in the approval of third-party ownership of the property subject to the in rem foreclosure procedure established by section 11-412.1.
As a result, the City’s motion for summary judgment is granted in its entirety and the complaint of plaintiffs is dismissed as against it. The action is severed accordingly and continued with respect to the remaining defendants.

 The court notes that Abdal Hafiz Wali pursues individual derivative claims in this action. The use of the plural “plaintiffs” when used in direct relation to lead paint injuries sustained will therefore always refer solely to the infant plaintiffs.