OPINION OF THE COURT
Mark I. Partnow, J.
Defendant Fénix Car Service Corp. moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint of plaintiff Joselito Rivera on the ground that there are no triable issues of fact with respect to its alleged vicarious liability for the active negligence of the driver of the offending vehicle in the underlying personal injury action. Plaintiff opposes such relief on the ground that questions of fact exist with respect to the level of control exercised by Fénix, a car service dispatching company, over the car service drivers with whom it contracted which preclude the grant of its instant motion for summary judgment.
The instant action arises out of injuries allegedly sustained by plaintiff as the result of a motor vehicle accident which occurred on July 30, 2006 in Brooklyn, New York. Plaintiff alleges that he was injured while riding his bicycle on Stanhope Street, between Cypress Avenue and Seneca Avenue, when the handlebar of his bicycle was struck by the mirror of a motor vehicle as it passed him on the left side. The vehicle left the scene of the accident. At the time of the accident, plaintiff observed a Fénix logo sticker on the vehicle’s passenger side rear window.
In support of its motion for summary judgment, Fénix submits the affidavits of Manuel Antonio Vaca, the president of Fénix, and Jose Elias Rodriguez, an employee of Fénix who, at the time of plaintiffs accident, maintained licensing records for the car service drivers with whom Fénix contracted. In his affidavit, Mr. Vaca states that Fénix provides a dispatch service on a contractual basis to car service drivers. He further avers that Fénix does not own any motor vehicles and its employees are dispatchers, operators and personnel. None of said employees own motor vehicles that are serviced by the company’s dispatching operations.
With respect to the drivers themselves, Mr. Vaca states that they are not employees of Fénix. Rather, said drivers are inde *799 pendent contractors who own their vehicles and pay their own car insurance. Customers of Fénix call the company via phone to request transportation services and Fénix then contacts a contracting driver via radio to dispatch him or her to the customer pickup location.
Mr. Vaca states that Fénix was never informed by plaintiff of his accident and did not learn of same until it received notice that the instant action had been commenced. Upon learning of the accident, Mr. Vaca conducted an investigation which consisted of identifying the drivers who worked during the week of the accident and individually contacting each driver and questioning the driver about the accident. He and an employee also personally interviewed all drivers who came to Fenix’s physical operations base on Tuesdays and Saturdays over the course of a month. No driver reported any involvement in an accident on July 30, 2006.
Mr. Vaca further states that Fénix has a reporting procedure for motor vehicle accidents. Pursuant to said procedure, drivers are required to call the operations base when an accident occurs. Upon receiving an accident call, a Fénix dispatcher will then contact emergency personnel by calling 911. An accident report is then generated and stays in Fenix’s computer system for approximately a year under the number of the car involved. According to Mr. Vaca’s affidavit, the Fénix operations base never received a report of a motor vehicle accident from any of its drivers on July 30, 2006.
Mr. Rodriguez states in his affidavit that the drivers who contract with Fénix obtain their own Taxi and Limousine Commission licences. Fénix does not set a work schedule for the drivers and is not responsible for their income. The drivers sign a contract to work with Fénix and pay a weekly fee to the company once they are authorized to receive radio calls from the Fénix dispatching base.
Pursuant to said contract, the drivers agree to abide by the regulations and dispositions of services to the client provided to them by Fénix and stipulate that compliance with such regulations is a condition “to remain affiliated like an independent contractor of one’s own vehicle.” The driver also agrees that “a fee predetermined for the Base has to be paid weekly for the service of transferred calls to [his or her] unit.”
The subject regulations provide that “[t]he independent conductive contractor of his/her own vehicle will provide service of transportation to the clients of [Fénix], without any relation *800 of labor dependency.” Said regulations also establish a dress code and code of professional conduct for the driver. Fénix also mandates the proper condition of the drivers’ vehicles and requires that same be inspected by the company twice a week, as well as whenever a complaint or observation is made as to a particular vehicle’s condition by either clients or employees of Fénix. Fénix also reserves the right to inspect the drivers’ vehicles to determine whether the heating and cooling systems are operating properly.
Fénix requires that the vehicles bear the logotype of Fénix and number of the vehicle in the superior part of the left side of the back windshield and small logotypes must be placed in each of the small windows at the back part of the vehicle. The number of the license of the Fénix operations base must be placed on the vehicle’s front and back bumpers. Specifically, the regulations state that “[fit is the responsibility of the [driver] to maintain the identification of the vehicle in good state and without any alteration, if not, one will not be able to receive calls until they are . . . placed in its [sic] proper locations.” The regulations also provide for proper radio identification procedures and identify the items (e.g., maps, Fénix business cards, emergency tools, etc.) which must be kept in the cars while they are in service. The proper use of the subject radios is also established by the regulations, as are sanctions for the improper use of same. The regulations outline the proper use of the dispatch service and treatment of customers, as well as providing penalties if such regulations are disobeyed by the driver.
Summary judgment should only be granted where there are no triable issues of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). In order to prevail on a motion for summary judgment, the movant must present a prima facie case demonstrating entitlement to judgment as a matter of law (Prince v DiBenedetto, 189 AD2d 757, 759 [1993]; Zarr v Riccio, 180 AD2d 734, 735 [1992]). Once the movant has established his or her prima facie case, the party opposing a motion for summary judgment bears the burden of “producing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact . . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; see also Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467, 470 [1991]; Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [1991]). Stated differently, “the *801 plaintiff must establish the existence of material facts of sufficient import to create a triable issue” (Shaw v Time-Life Records, 38 NY2d 201, 207 [1975]). In addition, the evidence presented on summary judgment must be scrutinized in the light most favorable to the party opposing the motion (Goldstein v County of Monroe, 77 AD2d 232, 236 [1980]). Since summary judgment deprives a party of his or her day in court (Henderson v City of New York, 178 AD2d 129 [1991]), it is a drastic remedy that will only be awarded when there is no triable issue of fact and the court can render a decision as a matter of law (Barclay v Denckla, 182 AD2d 658 [1992]). Moreover, “[i]t is well established that negligence cases do not generally lend themselves to resolution by summary judgment, since that remedy is appropriate only where the negligence or lack of negligence of defendant is established as a matter of law” (Chahales v Garber, 195 AD2d 585, 586 [1993]). Summary judgment is appropriate, however, even in negligence cases, where the movant satisfies his or her initial burden of proof and the nonmovant’s opposition to the motion for summary judgment is “entirely conjectural and there is no genuine issue [of fact] to be resolved” (Cassidy v Valenti, 211 AD2d 876, 877 [1995]; see also Shaw, 38 NY2d at 207 [noting that where a party has established his or her prima facie case, a motion for summary judgment based thereupon “may not be defeated merely by surmise, conjecture or suspicion”]).
In cases involving the alleged direct negligence of a car service driver, the company with which he or she is affiliated may only be held liable where said driver is determined to be an actual employee of the car service company as opposed to a mere independent contractor (see Kuchinski v Charge & Ride, Inc., 21 AD3d 1062, 1064 [2005]). It is well settled that “[t]he determination of whether an employer-employee relationship exists turns on whether the alleged employer exercises control over the results produced, or the means used to achieve the results. Control over the means is the more important consideration” (Abouzeid v Grgas, 295 AD2d 376, 377 [2002]). Accordingly, a car service company is not vicariously liable for the active negligence of its drivers where it exercised only incidental control over the performance of their work (see Pinto v TWR Express Corp., 22 AD3d 481 [2005]; Kuchinski, 21 AD3d at 1064; Holcomb v TWR Express, Inc., 11 AD3d 513, 514 [2004]; Irrutia v Terrero, 227 AD2d 380, 381 [1996]). Whether the alleged negligent actor was an independent contractor or employee at *802 the time of the subject accident is generally a factual issue for the jury (see Schiffer v Sunrise Removal, Inc., 62 AD3d 776, 779 [2009]).
Here, the court finds that triable issues of fact exist with respect to the level of control exercised by Fénix over its drivers. Although the contractual agreement between Fénix and the drivers who utilize its dispatching services explicitly denominates the . drivers as independent contractors, Fenix’s retention of control over certain aspects of the drivers’ conduct and job performance raises factual questions concerning whether an employer-employee relationship exists between Fénix and its drivers sufficient to render Fénix vicariously liable for their active negligence.
It has been held that where car service drivers own and maintain their own vehicles, receive no salary, retain their own fares, obtain their own health, automobile and disability insurance and set their own schedule of working hours, no material questions of fact exist as to their alleged status as employees of the car service company (see Irrutia, 227 AD2d at 381; see also Abouzeid, 295 AD2d at 377 [finding that defendant car service company established prima facie that it exercised only incidental control over its drivers where said drivers were franchisees who set their own hours and could reject dispatches, worked for other services, purchased their own gasoline and E-Z Passes, maintained their own insurance, and vehicles, hired other drivers to work for them and retained 100% of the cash payments from customers, while the car service company itself did not own or lease any of the drivers’ cars, only collected a processing fee and a percentage of fares from passengers paying by credit card or voucher, did not withhold any taxes for the drivers and provided a brief training session to drivers whose conduct subsequently was governed by independent committees]).
Although such elements are present in the instant case, other factors evidencing Fenix’s control over certain aspects of the drivers’ conduct and work performance militate against a finding that, as a matter of law, said drivers are not employees of Fénix. The contractual regulations promulgated by Fénix establish a dress code and code of professional conduct for the driver. Fénix also mandates the proper condition of the drivers’ vehicles and requires that same be inspected by the company twice a week, as well as whenever a complaint or observation is made as to a particular vehicle’s condition by either clients or employees of Fénix. Fénix also reserves the right to inspect the vehicles *803 in order to determine whether the heating and cooling systems operate properly.
In addition, the vehicles must bear the logotype of Fénix and the number of the license of the Fénix operations base. The regulations establish radio identification procedures and the proper use of the radios by the drivers, as well as identify the items (e.g., maps, Fénix business cards, emergency tools, etc.) which must be kept in the cars while the vehicles are in service. Said regulations also outline the proper use of the dispatch service in extensive detail and set rules concerning the treatment of customers. Finally, Fénix reserves the right to impose penalties in the event a driver fails to comply with the regulations. Accordingly, the existence of said regulations raises factual questions concerning both the level of control exercised by Fénix over the drivers with whom it contracts, and the concomitant issue of whether such control can be construed as “incidental” or, instead, is substantial enough to support a finding of an employer-employee relationship between Fénix and the drivers (see Devlin v City of New York, 254 AD2d 16, 16-17 [1998] [noting that although a number of factors militated against a finding of control by the subject car service company over its drivers sufficient to give rise to vicarious liability, questions of fact nonetheless existed concerning such liability given that the drivers were required to: (1) use specific motor vehicles; (2) adhere to a dress code; (3) display the company name and logo on the vehicle; (4) take a three-day orientation course from company personnel; (5) pay membership dues; (6) carry certain insurance; (7) follow the company’s bylaws and working rules or be subject to termination in certain circumstances; (8) maintain their cars pursuant to certain standards determined by the company and (9) abide by the detailed dispatching rules of the company]).
Accordingly, given the existence of triable issues of fact concerning the alleged vicarious liability of Fénix for the active negligence of the driver of the offending vehicle, the motion of Fénix for summary judgment is hereby denied in its entirety.